**The PEOPLE of the State of Colorado, Plaintiff-Appellee,**

v.

**Russell Eugene FREEMAN, Defendant-Appellant.**

**No. 84CA0747.**

Colorado Court of Appeals, Div. I.

Jan. 8, 1987.

Rehearings Denied March 12, 1987.

Certiorari Denied (Freeman) July 13, 1987.

---

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Robert M. Petrusak, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, Michael J. Heher, Deputy State Public Defender, Denver, for defendant-appellant.

PIERCE, Judge.

Defendant, Russell Freeman, was originally tried and convicted in 1980 of four counts of murder in connection with the killing of two victims. That conviction was overturned by our Supreme Court in *People v. Freeman*, 668 P.2d 1371 (Colo.1983), because the court found that certain incriminating statements made to police during custodial interrogation were involuntary. On retrial, defendant was tried by jury and convicted of two counts of first degree murder after deliberation. We affirm.

## I.

Defendant's first assignment of error concerns certain statements made by him at various times both before and after he made the involuntary confession that was ordered suppressed in *People v. Freeman, supra*. We address each statement separately.

### A.

Defendant first contends that a statement made to the arresting officer was obtained without a proper *Miranda* advisement. Although no objection was made to the introduction of the statement, nor was the issue raised in his motion for new trial, defendant argues that it should have been excluded upon the court's own initiative. We disagree.

■ The general rule is that an appellate court will not consider issues not properly raised at trial unless serious prejudicial error was made and justice requires the consideration. *Larkin v. People*, 177 Colo. 156, 493 P.2d 1 (1972).

■ Contemporaneous with his arrest, defendant told the arresting officer that he was "just leaving his girlfriend's house." The introduction of this statement was not properly preserved for review, and thus, any error relative thereto does not warrant our consideration. *See Larkin v. People, supra*. Moreover, even if error occurred, it was not so prejudicial as to require reversal. There is no probability that its admission could have changed the outcome of the trial. *See Larkin v. People, supra*.

### B.

The next incriminating statement was made to a county court judge during a court appearance. After being fully apprised of his rights, defendant proceeded to confess to the murders, despite the constant advice of the judge to refrain from speaking. Defendant contends that because this confession occurred subsequent to the tainted confession, it is a "fruit" of the prior involuntary statements. We disagree.

Defendant argues that the principles applied in *People v. Briggs*, 709 P.2d 911 (Colo.1985) control the admissibility of his in-court confession. However, this contention is misplaced. The court in *Briggs* discussed the "fruit of the poisonous tree" doctrine as it applied to third-party, live-witness testimony. There, the question was whether the third-party's cooperation was obtained as a fruit of the defendant's involuntary statements. A key factor was the role played by the involuntary statements in inducing the third-party's cooperation.

Here, it cannot be said that the defendant's prior involuntary statements were used to induce his subsequent confession. Thus, none of the factors discussed in *People v. Briggs, supra*, are present here. Rather, the more appropriate analysis is whether any subsequent statements were the product of the earlier taint, and that determination is to be made upon an examination of whether, in light of the totality of the circumstances, defendant's subsequent confession was voluntary. *See People v. Spring*, 713 P.2d 865 (Colo.1985).

■ Under the totality of the circumstances here, the trial court correctly found that the confession was voluntary. The trial court found that those factors which necessitated the suppression of the tainted confession had dissipated by the time defendant appeared before the court. The record adequately supports this finding, and thus, we will not disturb it on appeal. *See Gimmy v. People,* 645 P.2d 262 (Colo. 1982).

### C.

Defendant next challenges the admission of certain incriminating statements made to his cellmate. While acknowledging that the cellmate was not placed in the cell as an informant to elicit statements, defendant contends that because these statements were also subsequent to the involuntary statements, they too are the "fruit" thereof. We disagree.

■ Generally, the due process clause applies only to state action; however, although no state action is involved in an accused making incriminating statements to a private individual, a confession which is extracted under circumstances that so overbear a person's will as to render the statement involuntary is inadmissible. *Hunter v. People,* 655 P.2d 374 (Colo.1982).

■ In this case, defendant made several incriminating statements to his cellmate during the evening of his arrest. These statements were made against the warnings of his cellmate not to speak about the case. On the next day, defendant ultimately described the killings to his cellmate in considerable detail. Under these circumstances, we cannot conclude that defendant's will was so overborne as to render the statements involuntary.

### II.

Defendant next asserts error in the jury instruction regarding the prosecution's burden of proof as to each element of the crime. The jury was instructed to find the defendant not guilty if the prosecution failed to prove each of the elements beyond a reasonable doubt. Defendant argues that this instruction only allows the defendant to be found not guilty if the prosecution has failed to prove all of the elements. That is, he interprets the instruction to mean that if the prosecution fails to prove only one element, it has not failed to prove all of the elements, and a not guilty verdict should not be made. This contention is without merit.

■ The propriety of any one instruction must be determined by considering all of the instructions as a whole. *People v. Green,* 658 P.2d 281 (Colo.App.1982).

■ A plain reading of the instruction reveals that it correctly states the law. The instruction is in conformity with *COL-JI–Crim.2d* 9:01 and 9:02 (1983). Furthermore, all the instructions read as a whole sufficiently explained the state of the law. Accordingly, there was no error.

### III.

Defendant next contends that the trial court erred in failing to instruct the jury in accordance with his tendered instruction on complicity. The tendered instruction was identical to the instruction given except that defendant's instruction added an additional requirement that:

"Any intentional aiding, abetting, advising, or encouraging of the other person in the commission or the planning of the crime by the defendant must have occurred after the defendant had knowledge that the other person intended to commit all or part of the crime and before ordering the commission of the crime."

■ There is no requirement that the complicitor order the commission of the crime. *See People v. Thompson,* 655 P.2d 416 (Colo.1982). Thus, the trial court correctly refused the tendered instruction for that reason alone. The jury was properly instructed as to the applicable law, in accordance with *People v. Larson,* 194 Colo. 338, 572 P.2d 815 (1977). Therefore, there was no error in refusing defendant's tendered instruction.

## IV.

Defendant next contends that the trial court erred in finding that the body of one victim, Susan Williams, would inevitably have been discovered. This contention is based upon the trial court's finding that the body was found as a result of the defendant having provided police with the general location during the tainted confession. Citing *United States v. Satterfield*, 743 F.2d 827 (11th Cir.1984), *cert. denied*, 471 U.S. 1117, 105 S.Ct. 2362, 86 L.Ed.2d 262 (1985), defendant argues that the inevitable discovery rule was inapplicable primarily because there was no ongoing search for the body prior to the tainted confession. Therefore, he asserts since police were not actively pursuing the lawful means which made discovery inevitable prior to the illegal conduct, the inevitable discovery exception to the exclusionary rule could not apply. We disagree.

In *United States v. Satterfield, supra,* police were provided information by an eyewitness concerning a murder. Without obtaining a warrant, police entered the defendant's home and arrested him. Once inside the home, a search of the premises was conducted, and a shotgun was found beneath a sofa cushion. The prosecution argued that discovery of the shotgun was inevitable because a valid search warrant was obtained several hours after the illegal search, and thus, the shotgun would have been found at that time. In rejecting this contention, the court reasoned that an application of the inevitable discovery rule would practically destroy the requirement that a search warrant be obtained before the search takes place. Thus, to avoid the circumvention of the warrant requirement, the court concluded that the lawful means which made discovery inevitable must have been possessed by the police and actively pursued prior to the illegal conduct.

The reasoning of *United States v. Satterfield, supra,* is inapplicable to the facts at issue. Here, we are dealing with true inevitable discovery. The victim's body was found in an open field near a warehousing district. The body was dressed in white clothing, and located approximately 25 feet from a warehouse parking lot. The surrounding brown vegetation contrasted sharply with the victim's white clothing and the body was, therefore, easily detectable. These facts amply support the trial court's conclusion that the body would have inevitably been discovered. *See People v. Hogan,* 703 P.2d 634 (Colo.App.1985). Therefore, the deterrence rationale discussed in *United States v. Satterfield, supra,* is inapplicable, and the evidence was properly admitted. *See Nix v. Williams,* 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984).

## V.

Defendant's next contention concerns certain video cassettes shown to the jury. These tapes showed that defendant and one Fred Morris had participated in the selling of stolen automobiles. Because Morris had already been tried and convicted of felony murder for his role in the homicides at issue, defendant offered extrinsic evidence of this conviction at trial. The trial court excluded the evidence on relevancy grounds. Defendant argues that because Morris was a hearsay declarant by virtue of the videotapes, his credibility was subject to impeachment by a prior felony conviction. We find that any error was harmless.

CRE 806 provides that when a statement of a co-conspirator under CRE 801(d)(2)(E) is admitted into evidence, the credibility of the declarant may be attacked by any means which would be admissible if the declarant had testified as a witness. Thus, if Morris had testified at trial, his credibility would have been subject to attack by proof of any prior felony conviction. *See* § 13–90–101, C.R.S. However, any error which does not affect the defendant's substantial rights is to be disregarded. Crim.P. 52(a).

Here, the impeachment value of Morris' conviction was minimal at best. The tapes clearly showed that Morris and defendant had both participated in the crime. Evidence of Morris' conviction would have done nothing more than con-

firm that which was already apparent to the jury from a viewing of the tapes. Thus, the impeachment value of Morris' conviction was not of sufficient magnitude to require reversal. *See Early v. People,* 178 Colo. 167, 496 P.2d 1021 (1972).

## VI.

Defendant's remaining contentions are without merit.

The judgment is affirmed.

TURSI and METZGER, JJ., concur.