996 F.2d 312
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Daniel POWERS, Defendant-Appellant.
 No. 92-1261.
 United States Court of Appeals, Tenth Circuit.
 May 20, 1993.
 
 Before SEYMOUR, ANDERSON and EBEL, Circuit Judges.
 ORDER AND JUDGMENT*
 STEPHEN H. ANDERSON, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument.
 
 
 2
 The district court revoked Daniel Powers' probation after finding he had submitted false reports to his probation officer and had engaged in new criminal activity. Powers appeals, arguing that the district court's findings were based upon insufficient evidence, that his sentence was excessive, and that he was denied effective assistance of counsel. We affirm.
 
 FACTS
 
 3
 In 1985, Daniel Powers was convicted of interstate transportation of fraudulent securities and conspiracy to commit the same offense. The district court sentenced Powers to two years' imprisonment on the conspiracy count, a suspended sentence on the additional count, and five years' probation.
 
 
 4
 Powers was released from prison in December, 1987, at which time he commenced his five-year period of supervised probation. In January, 1992, the U.S. Probation Office filed with the district court its violation report alleging that Powers had filed false written reports and had failed to follow the instructions of his probation officer. At Powers' compliance hearing in March, 1992, the government informed the court that it had received a complaint from a University of Denver college professor, Ken Purcell, who maintained that he had invested $60,000 in a business purportedly run by Powers and others, and that his investment had not been placed in escrow or returned to Purcell as agreed. R.Supp.Vol. II at 5. Concerned that Powers was engaged in the same kind of activity that resulted in his original conviction, the district court instructed the probation office to amend its report to include any business activities in which Powers had engaged since his release from prison in 1987. Id. at 4. After further investigation, the U.S. Probation Office filed an amended violation report on May 1, 1992, alleging that Powers had not only filed false supervision reports, but had also committed theft by deception and securities fraud in violation of Colorado criminal statutes. R.Vol. I, Tab 16.
 
 
 5
 A revocation hearing took place on May 28-29, 1992. Testimony of several government witnesses revealed that for approximately four years, Powers had been involved in a series of real estate development projects, that he had asked for and received over $300,000 from individual investors, and that he falsely told each of these investors that funding for his large scale projects was in the process of closing, close to closing, or imminent. Representative of the testimony is the following.
 
 
 6
 In connection with one of his projects, Creative Development, Inc. (CDI), Powers convinced Gloria Suer to invest approximately $125,000, including a $70,000 line of credit for which she put up her farm and a 1932 Chevrolet as collateral. Powers assured Suer repeatedly that funding for CDI was imminent, that she would be repaid her funds very soon, and that she would receive an interest in CDI. R.Vol. III at 74-84. Powers also told Suer that he and his two partners had invested their own money in the project, and led her to believe that he had personally invested $200,000 Id. at 97, 106. Funding for the project never materialized and, ultimately, Suers lost her entire investment, and the farm she had used for collateral was foreclosed upon.
 
 
 7
 Darlene Fuchs also invested over $100,000 in CDI. R.Vol. III at 14. Powers made many of the same representations to Fuchs as he had to Suer, including the fact that he had mortgaged his home to invest in CDI, id. at 56, and that funding was already available for CDI. Id. at 19, 37. Additionally, Powers lied to Fuchs about his criminal record. Id. at 13. Fuchs, like Suer, lost her entire investment.
 
 
 8
 In connection with a second project, the Colorado International Communications Center (CICC), Powers convinced a Denver businessman, Gene Motta, to part with approximately $26,000 as operating expenses for the project. Motta also invested $75,000 in a downtown hotel renovation project, Skyline 19. Motta invested in the two projects after Powers showed him the financial statement of Peter Youssef, a "wealthy Arab" whom Powers said would be funding the projects. R.Vol. III at 116-21. Youssef testified that the financial statement shown to Motta was "completely wrong," id. at 202, and that he had neither the intention nor the ability to invest in Powers' projects. Id. at 177, 198. CICC and Skyline were never funded, and Motta lost all but about $14,000 of his investment. Id. at 145, 154.
 
 
 9
 Ken Purcell agreed to invest $60,000 in another Powers project, Golden West Investment Corporation. This sum was to be held in escrow and released only if and when Golden West received a commitment for a loan. A written agreement between Purcell and Golden West stated: "[I]f the loan is not received within 30 days, then all escrow funds with accrued interest dating back to February 27, [1991], when [Purcell] initially invested, would be returned to [Purcell] within 10 days following the end of the 30-day period, beginning on July 24th." R.Vol. IV at 328-29. The loan did not come through, and Purcell's funds were not returned to him. Id. at 329. After being put off by Powers on several occasions, Purcell contacted the U.S. Attorney's Office. Id. at 338-39. He received his $60,000 back a few weeks before Powers' May 28, 1992 hearing.
 
 
 10
 Finally, the government called several other witnesses who were not actually investors, but who provided professional services in connection with Powers' various projects. These individuals, including two architects, an engineer, and a member of a construction management firm, were not paid for their services. R.Vol. IV at 231, 256, 285, 311, 345-50.
 
 
 11
 On June 16, 1992, the district court issued an Order for Revocation of Probation in which it found that Powers had engaged in theft by deception, in violation Colorado law. He further found that Powers had falsely reported his employment and net earnings to his probation officer. R.Supp.Vol. I, Tab 1 at 3. At his sentencing hearing held on August 14, 1992, Powers was sentenced to ten years imprisonment with eligibility for parole after serving one-third of his term.[1] R.Vol. II at 397.
 
 DISCUSSION
 1. Sufficiency of Evidence
 
 12
 Powers first contends that the district court's finding of new criminal activity, theft by deception, was not supported by sufficient evidence. In particular, he asserts that the government failed to prove his intent to deceive, or that any of his investors relied on his alleged misrepresentations. Appellant's Opening Brief at 5-6.
 
 
 13
 Revocation of probation is within the discretion of the district court, and we will reverse its decision only for fundamental unfairness or for an abuse of discretion. United States v. Reber, 876 F.2d 81, 83 (10th Cir.1989). The district court may revoke probation if it is " 'reasonably satisfied that a violation of probation conditions has occurred.' " Id. (quoting United States v. Rife, 835 F.2d 154, 156 (7th Cir.1987)). "This standard applies to all violations of probation, including violations based on state law offenses ... [and] the court need not find proof of the defendant's guilt beyond a reasonable doubt...." United States v. Levine, 983 F.2d 785, 787 (7th Cir.1993).
 
 
 14
 The district court properly revoked Powers' probation. The government's evidence, which addressed all the elements of theft by deception under Colorado law,[2] enabled the court to reasonably satisfy itself that Powers had violated state law.
 
 
 15
 The offense of theft by deception requires proof that the defendant "knowingly or intentionally deprived the victim permanently of something of value ... by means of misrepresentations upon which the victim relied...." People v. Stewart, 739 P.2d 856, 855 (Colo.1987) (citations omitted). Intent can be inferred from the defendant's conduct and from the circumstances of the case. Id.
 
 
 16
 Powers induced several people to invest in development schemes by making false or misleading statements as to sources of funding. He falsely represented his own investment in these projects, and he falsely characterized the financial status of others, including Peter Youssef, whom Powers repeatedly referred to as the one who "was going to fund these projects, with ... family money." R.Vol. III at 105. Suer, Fuchs, Motta and Purcell all relied on Powers' misrepresentations about funding sources and his promises that these projects would close within a matter of days or weeks, promises which Powers did not and could not keep. The district court expressly found that "Powers did not have any reasonable belief that he could obtain the necessary funding and his representations were false and fraudulent." R.Supp.Vol. I, Tab 1 at 3. Accordingly, we hold that the district court did not abuse its discretion in finding sufficient evidence to reasonably satisfy itself that Powers, "by a pattern and practice of conduct over several years[,] has repeatedly violated the Colorado criminal statutes prohibiting theft by deception." Id.
 
 
 17
 Likewise, we hold that the court did not abuse its discretion in finding that Powers submitted false reports to his probation officer concerning his employment and his net earnings. The reports show that Powers told the probation office he was employed at Hunter Carpet Sales from August through December, 1991, and that he earned $6,400 during that period. R.Vol. IV at 361. However, testimony of the owner of Hunter Carpet, Steve Hunter, revealed that Powers had earned and received only $199.87 during the period in question. Id. at 279-80. We deem this evidence sufficient for the district court to reasonably satisfy itself that Powers had violated the terms and conditions of his probation.
 
 2. Excessiveness of Sentence
 
 18
 Powers next asserts that the district court's imposition of a ten-year sentence for his probation violation was "extraordinarily harsh under the circumstances." Appellant's Opening Brief at 31.
 
 
 19
 When probation has been revoked, the district court "may impose any sentence which might originally have been imposed." 18 U.S.C. § 3653; see, e.g., United States v. Szabo, 854 F.2d 251, 254 (7th Cir.1988) (district court did not abuse its discretion in sentencing defendant to three years' imprisonment upon probation revocation, even though defendant's original sentence was three years' probation); Sims v. United States, 607 F.2d 757, 758-59 (6th Cir.1979) (after suspending imposition of sentence and placing defendant on probation for two years, district court was authorized, upon revocation of probation, to impose sentence in excess of two years). Moreover, "[i]f a sentence is within statutory limits and not predicated upon misinformation or constitutionally impermissible considerations, then it is not subject to review on appeal." Szabo, 854 F.2d at 254; United States v. Endicott, 803 F.2d 506, 510 (9th Cir.1986).
 
 
 20
 Powers does not dispute the district court's statutory authority to impose upon him a ten-year sentence, nor does he argue that the sentence was based on misinformation or constitutionally impermissible considerations. None of these factors being present, we will not review the district court's sentencing decision.
 
 3. Ineffective Assistance of Counsel
 
 21
 Powers also asserts that he was denied effective assistance of counsel because his attorney did not call any witnesses to testify in his defense. This claim was not raised in the trial court. If a claim of ineffective assistance is not raised in the trial court, such claim will not be resolved on direct appeal, except in the rare case in which the record is sufficiently complete for effective appellate review. Beaulieu v. United States, 930 F.2d 805, 807 (10th Cir.1991). In Beaulieu, the court gave several examples of allegations of ineffective assistance of counsel which "cannot be determined on the basis of the trial record alone." Id. at 808. These include allegations that "trial counsel failed to interview or call certain witnesses," id., allegations which Powers raises here.
 
 
 22
 Because of the nature of these allegations we decline to address the ineffective assistance claims in this direct appeal, see Beaulieu, 930 F.2d at 805 n. 2, and dismiss the appeal as to this issue only, without prejudice to its examination on collateral proceedings under 28 U.S.C. § 2255.
 
 CONCLUSION
 
 23
 Mr. Powers' claim of ineffective assistance of counsel is DISMISSED, without prejudice to renewal in a collateral proceeding. The judgment of the district court is AFFIRMED. The mandate shall issue forthwith.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 Because the criminal conduct for which Powers was originally sentenced occurred prior to the Sentencing Reform Act, the district court's imposition of the ten-year sentence upon revocation of probation was pursuant to 18 U.S.C. § 4205(a). R.Vol. I, Tab 25
 
 
 [2]
 Colo.Rev.Stat.Ann. § 18-4-401 states:
 (1) A person commits theft when he knowingly obtains or exercises control over anything of value of another without authorization, or by threat or deception; and:
 (a) Intends to deprive the other person permanently of the use or benefit of the thing or value....