**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Sonny LEE, Defendant–Appellant.**

**No. 01CA2165.**

Colorado Court of Appeals, Div. III.

Sept. 25, 2003.

As Modified on Denial of Rehearing Dec. 24, 2003.

Certiorari Granted July 19, 2004.

---

§ 24-51-1105, C.R.S.2002.

Ken Salazar, Attorney General, Christine C. Brady, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Thomas K. Carberry, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge MARQUEZ.

Defendant, Sonny Lee, appeals the judgment of conviction entered on jury verdicts

finding him guilty of second degree kidnapping, two counts of first degree sexual assault, and accessory to a crime. We affirm.

Defendant was one of six men who kidnapped and sexually assaulted a woman in Boulder County in 1999. After his arrest, defendant was transferred to the Adams County jail for the purpose of recording his telephone conversations because, as a suspected gang member, he posed a security threat for possible retaliation against the witnesses and because he had stated to an inmate that he would contact people on the outside to help him escape.

Defendant moved to disqualify the district attorney, contending that her campaign remarks would deny him a fair trial because a jury would assume she would prosecute only a meritorious case. The trial court denied this motion, but granted defendant's motion for change of venue, and the case was transferred to Mesa County.

## I.

Defendant contends the trial court erred by denying his motion to suppress wiretaps of his phone calls from the Adams County jail because they violated the federal and state wiretap statutes and the prosecution failed to prove that he consented to the wiretaps. We disagree.

## A.

■ As a threshold matter, we note that defendant relies on certain state and federal statutes in his brief on this issue. Defendant concedes that the argument about the state wiretap statute was not raised before the trial court. Thus, we decline to address the state statute here. *See People v. Inman,* 765 P.2d 577 (Colo.1988)(appellate review of a suppression ruling is limited to the legal bases set forth in the trial court's ruling and not necessarily the grounds alleged in the motion); *People v. Gee,* 33 P.3d 1252 (Colo.App.2001)(accord).

## B.

■ Because defendant had no reasonable expectation of privacy, we also reject his contention of failure to prove consent.

When reviewing a trial court's suppression order, we defer to its findings of fact, but review its conclusions of law de novo. We must determine whether the trial court applied the correct legal standards to the facts of the case and whether sufficient evidence in the record supports its legal conclusions. *People v. Haley,* 41 P.3d 666 (Colo.2001).

■ Generally speaking, warrantless searches violate constitutional guarantees because they are presumptively unreasonable. *People v. Hill,* 929 P.2d 735 (Colo.1996).

■ However, the touchstone of the Fourth Amendment is reasonableness, and the reasonableness of a search is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests. *United States v. Knights,* 534 U.S. 112, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001).

■ In the absence of a reasonable expectation of privacy, law enforcement officials are free to conduct a warrantless search notwithstanding whether the search is also justified by exigent circumstances or some other exception to the warrant requirement of the Fourth Amendment. Prisoners have little, if any, reasonable expectation of privacy while incarcerated. *People v. Salaz,* 953 P.2d 1275 (Colo.1998); *see United States v. Peoples,* 71 F.Supp.2d 967 (W.D.Mo.1999)(curtailment of certain rights is necessary, as a practical matter, to accommodate a myriad of institutional needs and objectives of prison facilities, chief among which is internal security); *see also People v. Blehm,* 44 Colo.App. 472, 623 P.2d 411 (1980)(defendant had no justifiable expectation that her conversations in jail with her husband were private).

■ An exception to the federal wiretap law, 18 U.S.C. § 2511(2)(c) (2000), is that it is not unlawful for law enforcement officials to intercept a wire, oral, or electronic communication where one of the parties to the communication has given prior consent to the interception. Furthermore, consent may be

expressed or implied. *United States v. Peoples, supra.*

The essential issue is not whether the prosecution proved consent, but whether there is evidence in the record to support the trial court's findings of fact, and as long as there is support for them, we will not overturn those findings. *People v. Thomas,* 853 P.2d 1147 (Colo.1993); *see United States v. Hammond,* 286 F.3d 189 (4th Cir.2002)(the consent exception applies to prison inmates required to permit monitoring as a condition of using prison telephones).

■ Here, the trial court properly applied the standard set forth in *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), that a Fourth Amendment violation occurs only if a defendant has a justifiable expectation of privacy. *See People v. Gallegos,* 179 Colo. 211, 499 P.2d 315 (1972); *People v. Palmer,* 888 P.2d 348 (Colo.App. 1994).

Defendant does not dispute that his phone calls were from jail, and the trial court found from circumstantial evidence, including a video, a handbook, and posted signs, that defendant was aware that his telephone calls were monitored. The court also considered defendant's own recorded statements: "I think their phones here are recorded," and "It's not a good idea to talk on the phone." The court noted the physical location of the telephones, which were extremely close to each other, with no walls or other barriers between them. There was also a door in the immediate vicinity of the telephones through which other people could enter at any time. These factors undercut a reasonable expectation of privacy.

The trial court held that defendant's incarceration and the unreasonableness of any expectation of privacy in telephone calls from jail, especially when he received notice of the monitoring, precluded any relief.

We conclude that even if defendant did not consent, the court's determination that he had no reasonable expectation of privacy is supported by the record, and we will not disturb it on review.

## II.

We also reject defendant's contention that the trial court erred in denying his motion to remove the prosecutor on the grounds that her bid for the elected office of district attorney had tainted the judicial proceedings.

Section 20–1–107(2), C.R.S.2002, provides, in relevant part, that a motion to disqualify a district attorney shall not be granted unless "the court finds that the district attorney has a personal or financial interest or special circumstances exist that would render it unlikely that the defendant would receive a fair trial."

Prior to its amendment in 2002, and at the time the trial court here ruled, § 20-1-107 provided: "If the district attorney is interested or has been employed as counsel in any case which it is his duty to prosecute or defend, the court having criminal jurisdiction may appoint a special prosecutor to prosecute or defend the cause." Colo. Sess. Laws 1977, ch. 214 at 858-59.

■ The term "interested" in the prior statute was not defined or qualified. However, the supreme court interpreted the term to mean that disqualification is warranted when the district attorney has some involvement in the defendant's case such that the district attorney's ability to continue the prosecution fairly would be impaired. A showing of mere partiality is not sufficient. Allegations of interest must show a concern in the outcome of the matter such that the district attorney will either reap some benefit or suffer some disadvantage. *People v. C.V.,* 64 P.3d 272 (Colo.2003).

■ Under the prior statute, an appearance of impropriety has also been the basis for disqualification. An appearance of impropriety has been defined as a circumstance where the district attorney has an interest in the matter aside from his or her professional responsibility of upholding the law. *People v. C.V., supra; see People v. Palomo,* 31 P.3d 879 (Colo.2001).

■ The fundamental inquiry is whether disqualification appears reasonably necessary to ensure the integrity of the fact finding process, the fairness or appearance of

fairness of trial, the orderly or efficient administration of justice, or public trust or confidence in the criminal justice system. Trial courts have broad discretion in determining whether they should disqualify a district attorney from prosecuting a particular case. A court commits an abuse of discretion if it makes a manifestly arbitrary, unreasonable, or unfair decision. *People v. Palomo, supra; see People v. Rodriguez,* 914 P.2d 230 (Colo.1996).

■ Because an appearance of impropriety is almost entirely dependent on context, determinations grounded on this legal basis must turn on the circumstances of each particular case. Whether an appearance of impropriety exists and the remedy therefor are uniquely questions for the trial court and must be committed to that court's broad discretion. *People v. County Court,* 854 P.2d 1341 (Colo.App.1992).

■ While defendant here contends that there was actual impropriety in the district attorney's role in transferring him to Adams County for the purpose of recording his phone calls, that contention was not raised before the trial court and will not be addressed here.

■ Further, the record supports a determination that there was no appearance of impropriety. Although the trial court denied defendant's motion to remove the district attorney, it granted his motion for change of venue. On appeal, defendant does not identify any manner, other than pretrial publicity related to the campaign, in which his trial was unfair because of the participation of this particular district attorney. The change of venue would have cured any publicity problem. Additionally, the district attorney's potential political benefit from defendant's conviction is not sufficiently distinct from her professional responsibilities to warrant any finding of an improper interest in the outcome of the case. *See People v. Dist. Court,* 189 Colo. 159, 538 P.2d 887 (1975)(rejecting speculation that potential political gain would cause district attorney, who was a candidate for mayor, to overextend effort to convict).

Therefore, the trial court did not abuse its discretion.

## III.

■ Defendant next contends that the trial court violated a prospective juror's constitutional right to serve as a juror and violated defendant's constitutional right to equal protection when the trial court granted the prosecution's challenge for cause because the juror, who could speak and understand English, could not read or write English. We are not persuaded.

Section 13–71–105(2)(b), C.R.S.2002 provides that a prospective juror shall be disqualified based on the inability to read, speak, and understand the English language.

■ The fact finder, at a minimum, must be able to understand all of the evidence presented and evaluate that evidence in a rational manner. *People v. Hayes,* 923 P.2d 221 (Colo.App.1995).

■ Whether a prospective juror should be disqualified under the statute is a question of fact for resolution by the trial court. *People v. Duncan,* 33 P.3d 1180 (Colo.App.2001); *People v. Rodriquez,* 638 P.2d 802 (Colo.App. 1981).

Here, the trial court's determination that the prospective juror could not read English is supported by the record. The juror informed the court that he was unable to read or write English and would not understand the written exhibits. Under the statute, the juror was not qualified for service. *See People v. Rodriquez, supra.*

In the trial court, defendant objected to disqualification of the juror, arguing that under the Constitution each citizen has a right to serve and should be accommodated. He did not specifically challenge the constitutionality of § 13–71–105(2)(b). Nor did he raise the statutory construction issue articulated in his reply brief. Therefore, we address only the question of a juror's constitutional right to serve.

Defendant relies on *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), and *Francis v. Franklin,* 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985), for the proposition that mandatory presump-

tions violate the Fourteenth Amendment. He argues that the blanket exclusion of people who understand English, but do not read or write English, violates the constitutional rights of those people. However, both cases addressed the constitutionality of jury instructions involving a presumption that could have been understood to shift the burden of persuasion. Here, we are concerned with a juror's qualifications, not instructions.

Further, the United States Constitution does not forbid the states to prescribe relevant qualifications for their jurors. The states remain free to confine the selection to citizens, to persons meeting specified qualifications of age and educational attainment, and to those possessing good intelligence, sound judgment, and fair character. *Carter v. Jury Comm'n,* 396 U.S. 320, 90 S.Ct. 518, 24 L.Ed.2d 549 (1970); *see Powers v. Ohio,* 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991)(states may prescribe relevant qualifications for their jurors).

Thus, we perceive no error.

## IV.

Finally, we reject defendant's contention that the trial court committed structural error by giving improper instructions on reasonable doubt.

Where, as here, counsel fails to object or tender instructions on the omitted issues, appellate courts will consider only plain error in the giving of, or failure to give, pertinent instructions. Plain error is grave error that seriously affects the substantial rights of the accused. It is an error that is both obvious and substantial. *People v. Stewart,* 55 P.3d 107 (Colo.2002); *see Wilson v. People,* 743 P.2d 415 (Colo.1987). Structural error does not apply here. *See Griego v. People,* 19 P.3d 1 (Colo.2002).

The appropriate standard of review for an ambiguous instruction is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution. Further, we are required to consider the instructions as a whole, and there is no error if the instructions, taken together, adequately inform the jury of the law. *People v. Sherman,* 45 P.3d 774 (Colo.App.2001).

Here, the elements of the crime instructions included the following: "After considering all the evidence, if you decide the prosecution has failed to prove each of the elements beyond a reasonable doubt, you should find the defendant not guilty of [the charged crime]." *See* CJI–Crim. 11:04, 12:01 (1983).

Defendant argues that by using the word "each" in the elemental instructions, the trial court in effect told the jury that it must convict unless it found that the prosecution had failed to prove all the elements. We disagree.

Divisions of this court have rejected a similar argument. *See People v. Howard,* 89 P.3d 441, 2003 WL 21755956 (Colo.App. No. 01CA2465, July 31, 2003); *People v. Bogle,* 743 P.2d 56 (Colo.App.1987); *People v. Freeman,* 739 P.2d 856 (Colo.App.1987). We find those holdings persuasive and apply them here.

The trial court also provided the jury with an instruction on the presumption of innocence, which stated in pertinent part:

> The burden of proof is upon the prosecution to prove to the satisfaction of the jury beyond a reasonable doubt the existence of all of the elements necessary to constitute the crime charged.

> . . . .

> If you find from the evidence that each and every element has been proven beyond a reasonable doubt, you will find the defendant guilty. If you find from the evidence that the prosecution has failed to prove any one or more of the elements beyond a reasonable doubt you will find the defendant not guilty.

*See* CJI–Crim. 3:04 (1983).

In addition, the jury was instructed: "No single rule describes all the law which must be applied. Therefore, the rules must be considered together as a whole." Absent evidence to the contrary, we presume that the jury understood and heeded the trial court's instructions. *Copeland v. People,* 2 P.3d 1283 (Colo.2000).

Thus, we hold that the elemental instructions here, considered in conjunction with the rest of the trial court's instructions, do not rise to the level of plain error.

The judgment is affirmed.

Judge ROY and Judge HUME * concur.