2012 COA 45

**In re 2010 DENVER COUNTY GRAND JURY, and Concerning the Grand Jury Report Issued December 8, 2010.**

**No. 11CA0146.**

Colorado Court of Appeals, Div. II.

March 15, 2012.

Scott W. Storey, District Attorney, Mark Pautler, Senior Chief Deputy District Attorney, Thomas M. Jackson, Chief Deputy District Attorney, Golden, Colorado, for Appellant.

Haddon, Morgan and Foreman, P.C., Jeffrey S. Pagliuca, Cleo J. Rauchway, Denver, Colorado, for Denver District Court.

Mitchell R. Morrissey, District Attorney, Joseph M. Morales, Chief Deputy District Attorney, Denver, Colorado, for Interested Party Denver District Attorney's Office.

Douglas J. Friednash, City Attorney, Stuart Shapiro, Assistant City Attorney, Karla J. Pierce, Assistant City Attorney, Denver, Colorado, for Interested Party City and County of Denver.

Opinion by Judge CASEBOLT.

¶1 This appeal concerns the potential public release of a report, issued by a grand jury, which declined to return an indictment in an investigation involving alleged perjury. Special prosecutor Scott W. Storey, the First Judicial District Attorney, appeals the court's order declining to release the report, contending that the report meets the "public interest" criteria of section 16–5–205.5, C.R.S.2011. He also asserts that the court erroneously refused to extend the term of the grand jury so that it could consider whether to modify its report. We conclude that the report does not address "allegations of misfeasance" within the meaning of section 16–5–205(5), and therefore the report will not be published. We also conclude that the court did not err in refusing to extend the term of the grand jury. Hence, we affirm the orders of the district court.

¶2 We have decided to publish this opinion because what constitutes misfeasance presents an issue of first impression involving statutory construction. See C.A.R. 35(f). However, because of the secrecy requirements applicable to the grand jury proceedings, see Crim. P. 6.2 (the oath of secrecy continues until an indictment is issued or a report is made public), we are not publishing our application of the misfeasance standard to the grand jury report. Instead, we are concurrently issuing a nonpublished opinion, under seal, to the special prosecutor and counsel for the court and interested parties, which contains the application of the law to the particular facts involved.

## I. Background

¶3 A Denver County grand jury convened in September 2010 to investigate allegations of perjury by a police officer. The grand jury did not return an indictment. It did, however, issue a report concerning its investigation, which identified purported deficiencies in policies and procedures relating primarily to the Denver Police Department. The grand jury sought to make the report public pursuant to section 16–5–205.5. That statute states, in pertinent part, that a grand jury report may be released to the public when such release would be in the "public

interest." The statute provides that release is deemed to be in the public interest only if the report addresses one or more of the following: (a) allegations of the misuse or misapplication of public funds; (b) allegations of abuse of authority by a public servant; (c) allegations of misfeasance or malfeasance with regard to a governmental function; or (d) allegations of commission of a class 1, class 2, or class 3 felony. § 16–5–205.5(5).

¶ 4 Grand jurors and the special prosecutor certified that the report met these statutory criteria and that its release would be in the public interest. The court, however, concluded that the report did not meet the public interest criteria and refused to release it.

¶ 5 The special prosecutor then moved to extend the term of the grand jury so that it could review and modify its report in light of the court's order. The court denied that motion without comment, and this appeal followed.

## II. Release of Report

¶ 6 The special prosecutor asserts that the grand jury report contains allegations of government misfeasance within the meaning of section 16–5–205.5(5) and therefore should have become a public document. The statute does not define "misfeasance," and the parties disagree over the definition we should apply. Accordingly, we must first consider how Colorado law defines "misfeasance" in a governmental function, and then decide whether the grand jury's report meets that standard.

### A. Standard of Review

¶ 7 When determining whether to release a grand jury report,

[t]he role of the trial court is to review the report independently to determine whether, on its face, the report satisfies the requirement that it concern matters of public interest, as defined in the statute. By that review, the trial court is measuring the certification of the grand jury foreperson and the prosecuting attorney against the facts contained in the report.

*In re 2000–2001 District Grand Jury,* 22 P.3d 922, 928 (Colo.2001) (*Grand Jury I* ).

Thus, "[t]he trial court's role in reviewing the grand jury proceedings is limited." *Id.* at 926.

The statute does not authorize the court to inquire into the underlying facts that comprise the report, except to the extent that the court must determine that the certifications of the grand jury foreperson and prosecuting attorney are borne out by the report: specifically, that the report contains matters of public interest within the narrow definition of the statute.

*Id.*

¶ 8 We review the trial court's decision concerning release of a grand jury report as a mixed question of law and fact. *In re 2003–2004 Term of State Grand Jury,* 148 P.3d 440, 445 (Colo.App.2006). We review de novo the court's application of the governing statutory standards, but we will not disturb the trial court's findings of fact unless they are clearly erroneous and not supported by the record. *Id.*

¶ 9 Like the trial court, we limit our review to the face of the report and any attachments. *Grand Jury I,* 22 P.3d at 928. We may not "inquire behind the report" into underlying factual disputes or rely in any way upon sealed records or transcripts. *Id.* Instead, we must "measure the statutory sufficiency of the report by reviewing only the report itself and the accompanying certifications and responses." *In re 2000–2001 District Grand Jury,* 97 P.3d 921, 926 (Colo. 2004) (*Grand Jury II* ).

¶ 10 Interpretation of a statute presents a question of law that we review de novo. *Robles v. People,* 811 P.2d 804, 806 (Colo. 1991). When interpreting a statute, "[o]ur objective is to effectuate the intent and purpose of the General Assembly." *Lobato v. Indus. Claim Appeals Office,* 105 P.3d 220, 223 (Colo.2005). To discern legislative intent, we look first to the plain and ordinary meaning of the statutory language. *People v. Madden,* 111 P.3d 452, 457 (Colo.2005).

### B. Law

¶ 11 The Colorado Constitution expressly delegates the power to regulate the grand jury to the General Assembly. *Grand Jury*

*I*, 22 P.3d at 925 (citing Colo. Const. art. 2, § 23); *de'Sha v. Reed,* 194 Colo. 367, 371, 572 P.2d 821, 823 (1977).

¶ 12 In 1997, the General Assembly enacted section 16–5–205.5, summarized above, which has a number of procedural safeguards protecting against imprudent issuance of reports:

> Specifically, a grand jury report may only issue if at least the same number of jurors required to return an indictment agree to file the report. § 16–5–205.5(1). Further, both the foreperson and the prosecuting attorney must certify that the grand jury has determined that the release of the report is in the public interest in accordance with the statute. § 16–5–205.5(4)(b). Within ten days of receiving the report, the prosecuting attorney must notify the parties named in the report so they may review it and submit a response. § 16–5–205.5(3). After the time for submission of responses, the prosecutor then submits the report to the court. § 16–5–205.5(4). The court must examine the report and make an order accepting and filing the report if the court is satisfied that the grand jury followed statutory procedures.

*Grand Jury I,* 22 P.3d at 926.

¶ 13 Thus, section 16–5–205.5 balanced the need to keep grand jury proceedings secret against the interest in allowing the grand jury to inform the public "about 'government actions that fall short of criminal activity, but are nonetheless not good government.'" *Id.* at 927 (quoting Hearing on HB 97–1009 before Sen. Judiciary Comm., 61st Gen. Assemb., 1st Sess. (Jan. 21, 1997) (statement of Bill Ritter, Jr., District Attorney for Second Judicial District)); *see Grand Jury II,* 97 P.3d at 926. Recognizing both the dangers and benefits of releasing a grand jury report where no indictment is returned, the statute's drafters attempted to balance those competing interests. *Grand Jury II,* 97 P.3d at 927.

¶ 14 Historically, the grand jury has been given broad power as an investigative and accusatory body to "ferret out criminal activity." *Grand Jury I,* 22 P.3d at 924 (quoting *Gher v. Dist. Court,* 183 Colo. 316, 319, 516 P.2d 643, 644 (1973)). Consequent-

ly, "[a] grand jury is accountable to no one and should not be used as a super-legislative body or to express views on political issues." *Id.* (quoting *In re 1976 Arapahoe County Statutory Grand Jury,* 194 Colo. 308, 310, 572 P.2d 147, 148 (1977)). In cases involving acts of police officers, political corruption, reluctant witnesses, and organized crime, however, the grand jury provides a "necessary and worthwhile service" by ensuring impartiality in the charging process. *Losavio v. Kikel,* 187 Colo. 148, 151, 529 P.2d 306, 308 (1974).

¶ 15 The court in *Grand Jury I,* for example, held it proper for a grand jury investigating election law violations by city officials to issue a public report on its findings despite its decision not to return an indictment. *Grand Jury I,* 22 P.3d at 929. Although the court observed that "[t]he allegations that the report addresses concern matters that are within the statutory definition of 'public interest,'" it did not specify which provision of section 16–5–205.5(5) it was applying. *Id.* The court, however, cited an example from the legislative history of section 16–5–205.5, suggesting that it would be appropriate to release a grand jury report where the investigation of a public construction project uncovered a "massive waste of resources by city contractors." *Id.* at 927 n. 6 (quoting Hearing on HB 97–1009 before H. Judiciary Comm., 61st Gen. Assemb., 1st Sess. (Jan. 21, 1997) (testimony of Representative Bill Kaufman)).

¶ 16 Section 16–5–205.5(5)(c) does not define "misfeasance or malfeasance with regard to a governmental function." The parties agree that this subsection is the only public interest criterion at issue in this appeal, and they offer various definitions of conduct that would meet the statutory standard. Because the parties focus on allegations of misfeasance as opposed to malfeasance, we limit our discussion accordingly.

¶ 17 We have found no Colorado cases discussing the meaning of misfeasance in this context. Accordingly, we give the term its plain and ordinary meaning, *see Harwood v. Senate Majority Fund, LLC,* 141 P.3d 962, 964 (Colo.App.2006), and look preliminarily to

dictionary definitions. *See Sanger v. Dennis,* 148 P.3d 404, 411 (Colo.App.2006); *see also In re 2003–2004 Term of State Grand Jury,* 148 P.3d at 444 (citing dictionary definition of "case" when not specifically defined in section 16–5–205.5 or the Colorado Rules of Criminal Procedure); *cf. Denver Publ'g Co. v. Bd. of County Comm'rs,* 121 P.3d 190, 195 (Colo.2005) (undefined words and phrases must be read in context).

¶ 18 *Black's Law Dictionary* 1090 (9th ed. 2009), defines "misfeasance" as "[a] lawful act performed in a wrongful manner" or "[m]ore broadly, a transgression or trespass." The term is also defined as "the performance of a lawful action in an illegal or improper manner" or "wrong or improper conduct in public office." *Webster's Third New International Dictionary* 1443 (1986). Defining the term in these ways, however, does not necessarily provide clarity. *See Gresh v. Balink,* 148 P.3d 419, 423 (Colo.App.2006) (defining term "relevant" did not provide an answer to plaintiff's contention). Hence, we look to other sources and cases applying the term to various fact patterns.

¶ 19 Colorado courts have drawn a distinction between misfeasance and nonfeasance in the context of civil negligence. In *Smit v. Anderson,* 72 P.3d 369, 372 (Colo.App.2002), for example, a division of this court observed:

> In determining whether a defendant owes a duty to a particular plaintiff, the law distinguishes between acting and failure to act, that is, misfeasance, which is active misconduct that injures others, and nonfeasance, which is a failure to take positive steps to protect others from harm. *See University of Denver v. Whitlock,* 744 P.2d 54 (Colo.1987). The reason for this distinction is that a misfeasant creates a risk of harm; while the nonfeasant, although not creating a risk of harm, merely fails to benefit the injured party by interfering in his or her affairs. *See Perreira v. State,* [768 P.2d 1198 (Colo.1989) ]. Thus, because in misfeasance the actor has created a new risk, and in nonfeasance the actor has simply preserved the status quo, the situations in which nonfeasance leads to liability are more circumscribed than those

for misfeasance. *See Lego v. Schmidt,* 805 P.2d 1119 (Colo.App.1990).

¶ 20 Courts in other states have addressed government misfeasance in the context of recall elections and misconduct by public officials. For example, "[t]he common law crime of misfeasance in office has been clearly defined by [Pennsylvania] appellate courts to mean either the breach of a positive statutory duty or the performance by a public official of a discretionary act with a corrupt motive." *Commonwealth v. McSorley,* 189 Pa.Super. 223, 150 A.2d 570, 572 (1959).

¶ 21 Similarly, the New Mexico Supreme Court has held that "when a public officer has a right to perform an act which is discretionary, the manner in which the discretion is exercised does not rise to the level of misfeasance unless the discretion is exercised with an improper or corrupt motive." *CAPS v. Bd. Members,* 113 N.M. 729, 832 P.2d 790, 792 (1992). That court explicitly rejected a definition of "misfeasance" that would have included "action taken [by school board members,] which is not in the best interests of the majority of the students and constituents of the school district." *Id.* at 791 (disapproving of *Bocek v. Bayley,* 81 Wash.2d 831, 505 P.2d 814, 817 (1973)).

¶ 22 A Washington state statute providing for the recall of elected officials defines misfeasance in office as "any wrongful conduct that affects, interrupts, or interferes with the performance of official duty" or "the performance of a duty in an improper manner." Wash. Rev.Code § 29A.56.110(1) (2011). Interpreting this statute, Washington courts have rejected allegations of misfeasance based on poor judgment and acts within the discretion of public officials.

¶ 23 In *In re Shipman,* 125 Wash.2d 683, 886 P.2d 1127, 1131 (1995), for example, the court held that petitioners seeking the recall of public utility commissioners presented insufficient evidence of misfeasance by alleging that they adopted budgets without adequate accounting information and appropriated excessive funds for personnel costs. The court added, "All in all, appellants accuse respondents of inadequate accounting practices, mismanagement, and poor judgment. While these matters may be properly raised in the

course of a regular election, such questions of judgment and discretion do not constitute proper bases for recall." *Id.* at 1132.

¶ 24 Similarly, when petitioners sought to recall a county prosecutor for failing to investigate alleged corruption by a former county assessor, the court perceived insufficient evidence of misfeasance. *In re Recall of Lindquist,* 172 Wash.2d 120, 258 P.3d 9, 15–16 (2011). Noting that "[p]rosecutors enjoy wide discretion 'to file charges or refuse to charge for reasons other than the mere ability to establish guilt,' " *id.* at 15 (quoting *State v. Rowe,* 93 Wash.2d 277, 609 P.2d 1348, 1353 (1980)), the court concluded that the prosecutor had no duty to investigate and did nothing that would constitute "misfeasance, malfeasance, or breach of oath of office." *Id.* at 16.

¶ 25 The above definitions of "misfeasance" share an emphasis on illegal, wrongful, or improper conduct that actively breaches a duty, *see Smit,* 72 P.3d at 372; *Lindquist,* 258 P.3d at 15–16, or results from corrupt motives. *See McSorley,* 150 A.2d at 572; *CAPS,* 832 P.2d at 792. The cases make clear that discretionary judgments by government officials, even if ill-informed or unwise, do not generally rise to the level of misfeasance. *See CAPS,* 832 P.2d at 792; *Shipman,* 886 P.2d at 1131; *Lindquist,* 258 P.3d at 15–16.

■ ¶ 26 Thus, while section 16–5–205.5 may provide for exposure of "government actions that fall short of criminal activity, but are nonetheless not good government," *Grand Jury I,* 22 P.3d at 927, we conclude that misfeasance involves conduct that is not simply bad public policy, but an illegal, wrongful, or corrupt exercise of government power.

■ ¶ 27 We decline to simply extend the tort law definition of misfeasance to the government context, as one of the interested parties urges. For purposes of a negligence claim, misfeasance is a legal term of art encompassing tort law concepts such as duty, foreseeability, and harm. *See Smit,* 72 P.3d at 372. Although the distinction between misfeasance and nonfeasance is useful because it clarifies the difference between

active misconduct and failure to act, we disagree that these terms and their legal connotations are directly applicable here. We are not persuaded that strict reliance on tort law doctrine would give effect to the plain meaning of section 16–5–205.5.

¶ 28 Nor do we rely entirely on the dictionary definitions favored by the special prosecutor. Although those definitions properly focus on wrongful or improper conduct, they do not resolve the key distinction between objective impropriety and subjective opinion in the context of discretionary policy judgments by government officials.

■ ¶ 29 Our view of misfeasance fits with the historical principle that the grand jury exists primarily to investigate criminal activity and "may[ ] not[,] in the absence of enabling legislation, act in civil matters or exercise its authority to harass another governmental body for political or civil purposes." *Gher,* 183 Colo. at 318, 516 P.2d at 644. Because of its limited accountability and broad investigative powers, the grand jury "should not be used as a super-legislative body or to express views on political issues." *In re 1976 Arapahoe County Statutory Grand Jury,* 194 Colo. at 310, 572 P.2d at 148. The procedural safeguards built into section 16–5–205.5 indicate that the General Assembly did not intend to change the longstanding rule that a grand jury should not second-guess public policy under the guise of a criminal investigation. When interpreting legislative amendments, we assume that the General Assembly was aware of existing case law. *People v. McCullough,* 6 P.3d 774, 778 (Colo.2000).

¶ 30 Comparison of section 16–5–205.5 with statutes in other states underscores our conclusion that Colorado lawmakers did not intend to make public grand jury findings beyond "matters of public interest within the narrow definition of the statute." *Grand Jury I,* 22 P.3d at 926. Colorado's grand jury report statute was modeled after Alaska R.Crim. P. 6.1. *Id.* at 932 (Martinez, J., dissenting). (citing Hearing on HB 97–1009 before H. Judiciary Comm., 61st Gen. Assemb., 1st Sess. (Jan. 21, 1997)). The Alaska rule explicitly authorizes a grand jury to "investigate and make reports and recom-

mendations concerning the public safety or welfare." Alaska R.Crim. P. 6.1(a)(1); *see also* Alaska Stat. § 12.40.030 (2011) ("The grand jury shall have the power to investigate and make recommendations concerning the public welfare or safety."). The Colorado legislature, however, did not adopt this language when it enacted section 16–5–205.5, nor did it authorize a grand jury to make "recommendations" beyond the scope of the statute. Instead, the legislature provided specific descriptions of circumstances under which publication would be warranted. Indeed, in one of the examples from the legislative history cited by the special prosecutor, the provision for making public a report concerning "massive waste of resources by city contractors," *Grand Jury I*, 22 P.3d at 927 n. 6 (quoting Hearing on HB 97–1009 before H. Judiciary Comm., 61st Gen. Assemb., 1st Sess. (Jan. 21, 1997) (testimony of Representative Bill Kaufman)), is specifically provided for by section 16–5–205.5(5)(a). There is no indication that section 16–5–205.5(5)(c) was also intended to cover such situations.

¶ 31 This distinguishes the Colorado statute from, for example, the New York statute, which provides that a grand jury may issue a report:

(a) Concerning misconduct, non-feasance or neglect in public office by a public servant as the basis for a recommendation of removal or disciplinary action; or

(b) Stating that after investigation of a public servant it finds no misconduct, non-feasance or neglect in office by him provided that such public servant has requested the submission of such report; or

(c) *Proposing recommendations* for legislative, executive or administrative action in the public interest based upon stated findings.

N.Y.Crim. Proc. Law § 190.85(1) (McKinney 2011) (emphasis added). Interpreting that section, a New York court allowed a grand jury investigating a town highway department to issue a report recommending changes in the department's record keeping procedures, an audit to determine if outright purchase of department vehicles would be more economical than rental, and a referendum to determine whether the highway department should be abolished in favor of a department of public works. *In re Report of August–September 1983 Grand Jury III*, 103 A.D.2d 176, 479 N.Y.S.2d 226, 227–28 (N.Y.App.Div.1984). The court went on to observe that "[s]uch a report will be issued when the system or situation investigated is not so seriously flawed that indictment or ... disciplinary action is called for, but where, nonetheless, the system is found to be less than perfect and the public interest would be served by making corrective changes." *Id.* at 231.

¶ 32 As we have discussed, however, the Colorado statute's use of the term "misfeasance" presents a far narrower standard.

### C. Application

¶ 33 Here, our analysis is informed by the various definitions of misfeasance submitted by the parties, but it does not turn solely on the adoption of one formulation over the other. Instead, we review the report for allegations of breach of a positive duty; objectively wrongful, illegal, nondiscretionary government conduct; or conduct that, while discretionary, is also accompanied by a corrupt motive. Having done so, we find nothing that would fit those criteria.

¶ 34 Accordingly, we hold that the grand jury's recommendations regarding public policy and other matters of judgment or discretion do not constitute allegations of government misfeasance under section 16–5–205.5. The report here does not sufficiently allege misfeasance and therefore does not qualify for public release.

### III. Extension of Grand Jury Term

¶ 35 The special prosecutor contends that the court erroneously refused to extend the term of the grand jury so it could review and modify its report, or draft a new one, in light of the court's order denying publication. He argues that if the goal of a grand jury report is to inform the public of matters the grand jury believes are of public interest, then it should not matter how many times it takes to get the format correct. We disagree with this premise and perceive no error.

## A. Standard of Review

¶ 36 We are not aware of any Colorado case establishing the standard of appellate review of a court's decision whether to extend the term of a grand jury. However, the language in the authorizing statute and other authority leads us to conclude that we should review the court's decision under an abuse of discretion standard.

¶ 37 "Grand juror service shall be for a term of twelve months unless the court discharges the jurors earlier or enlarges such term upon a finding that the efficient administration of justice so requires; except that in no event shall a grand jury serve for longer than eighteen months." § 13–71–120, C.R.S. 2011.

¶ 38 Previous Colorado cases addressing the extension of a grand jury term were decided under different versions of the statute. *See, e.g., Losavio,* 187 Colo. at 154, 529 P.2d at 310 ("[T]he grand jury shall sit until discharged by the court, but not to exceed eighteen months."); *Buchler v. Dist. Court,* 158 Colo. 205, 210, 405 P.2d 950, 952 (1965) (reciting general rule that "in the absence of a statute to the contrary, 'the life of the grand jury terminates on the expiration of the term of court for which it is summoned'" (quoting 38 C.J.S. *Grand Juries* § 32, at 1023)). Consequently, the cited cases are of limited help when construing the current statute.

¶ 39 The current statute refers to the "efficient administration of justice." Colorado courts have applied the abuse of discretion standard to other provisions involving similar terminology. *See, e.g., People v. Lee,* 93 P.3d 544, 549 (Colo.App.2003) (deciding whether to disqualify a district attorney under criteria including "the orderly or efficient administration of justice").

¶ 40 Further, other courts have held that a trial court has discretion in deciding whether to extend a grand jury's term. *See Korman v. United States,* 486 F.2d 926, 933 (7th Cir.1973) (holding that extension of a federal grand jury's term was "within the discretionary powers of the District Court").

¶ 41 To say that a court has discretion in resolving an issue means that it has the power to choose between two or more courses of action and is therefore not bound in all cases to select one over another. *Colo. Nat'l Bank v. Friedman,* 846 P.2d 159, 166 (Colo.1993). We will not disturb a trial court's discretionary ruling unless it is manifestly arbitrary, unreasonable, or unfair. *Kinney v. People,* 187 P.3d 548, 558 (Colo. 2008).

## B. Application

¶ 42 Here, we cannot say that the trial court abused its discretion by refusing to extend the grand jury's term. As the supreme court has emphasized, "[t]he trial court's role in reviewing the grand jury proceedings is limited." *Grand Jury I,* 22 P.3d at 926. We are not persuaded that the trial court had any obligation to allow the grand jury to reconvene to modify its report, and the record supports the conclusion that further proceedings would not serve the efficient administration of justice.

¶ 43 For one thing, nothing in sections 13–71–120 and 16–5–205.5 refers to multiple drafts of a grand jury report or suggests an editorial or advisory role for the district court in the preparation of a report. To the contrary, "the role of the trial court is to review the report independently." *Grand Jury I,* 22 P.3d at 928. Furthermore, section 16–5–205.5 "removes any inquiry into sufficiency of the evidence from the trial court." *Id.* The governing statutes cast the district court as an independent gatekeeper, not as an active partner in the publication of a report.

¶ 44 Moreover, a court has no discretion to redact a grand jury report. *Id.* at 926–27 (noting that the General Assembly rejected an initial version of the bill that would have allowed a trial court to expunge any portion of a report not supported by a preponderance of the evidence). If a court cannot redact material from a report, it stands to reason that it cannot exercise de facto editorial control by sending the report back to grand jurors with substantive feedback. A new or revised draft responding to the court's rejection of a previous draft would

necessarily intertwine the court's editorial judgment with that of the grand jury.

¶ 45 Here, the report does not identify conduct rising to the level of government misfeasance. We disagree with the special prosecutor's suggestion that it should not matter how many times it takes to get the format correct, because the issue here goes beyond format or other technicalities. Minor revisions or the use of different terminology would not change the fact that the grand jury report does not allege sufficient misconduct to permit publication under section 16–5–205.5. Merely labeling the conduct "misfeasance," rather than "deficient" or "inadequate," would not obligate the trial court to release the report, because the underlying conduct still would not fit the definition of that term.

¶ 46 Although the grand jury expressed a desire to continue its investigation and ultimately release a report, "[n]owhere does [section 16–5–205.5] direct the court to accept the grand jury's own interpretation of its mandate." *In re 2003–2004 Term of State Grand Jury*, 148 P.3d at 445. Consequently, we disagree with the special prosecutor's suggestion that the goal of a grand jury report is to inform the public of matters the grand jury believes are of public interest. While the grand jury's belief and certification are statutory factors, *see* § 16–5–205.5(4)(b), "the role of the district court is to review the report independently to determine whether, on its face, the report satisfies the requirement that it concern matters of public interest." *Grand Jury I*, 22 P.3d at 928. Accordingly, the grand jury's desire to revise its report for publication cannot override the court's determination that the allegations in the report do not meet the public interest standard.

### IV. Conclusion

¶ 47 In sum, we conclude that the grand jury report does not allege government misfeasance within the meaning of section 16–5–205.5(5) and will therefore remain sealed. We also perceive no abuse of discretion by the court in denying an extension of the grand jury's term.

¶ 48 The orders are affirmed.

Judge HAWTHORNE and Judge J. JONES concur.