206 P.3d 1248 (2009)
In the Matter of the RECALL OF Paul TELFORD and Bill McGreggor, Port of Olympia Commissioners.
No. 81865-7.
Supreme Court of Washington, En Banc.
May 7, 2009.
*1250 Arthur West, Olympia, WA, Appearing Pro Se.
Carolyn A. Lake, Goodstein Law Group PLLC, Tacoma, WA, David V. Klumpp, Thurston County Prosecutor's Office, Jeffrey Todd Even, Attorney General's Office, Olympia, for Respondent.
MADSEN, J.
¶ 1 Appellant Arthur West appeals from a Thurston County Superior Court judgment finding the charges in his petition to recall port commissioners Paul Telford and Bill McGreggor to be legally insufficient to submit to voters. In his recall petition, West alleged the commissioners committed malfeasance because they approved expenditures and a lease without a comprehensive scheme of harbor improvements as required under RCW 53.20.010. West argues that a comprehensive scheme of harbor improvements must be a single document, titled "comprehensive scheme," and asserts the port has no such document. West also alleged Telford approved a lease without first subjecting it to State Environmental Policy Act (SEPA) (ch. 43.21C RCW) review. We find these charges insufficient and affirm the trial court.
¶ 2 The petitioner also presents a constitutional challenge to RCW 29A.56.110-.140, arguing the requirement that a recall petition be reviewed by a superior court for factual and legal sufficiency is an unconstitutional limit on citizens' right to recall public officials. This court has rejected similar challenges because this statutory provision is necessary to carry out the framers' intent to limit the scope of the recall right to recall for cause. Accordingly, we find this provision constitutional.

FACTS
¶ 3 On April 29, 2008, appellant Arthur West filed a petition to recall two Port of Olympia commissioners, Paul Telford and Bill McGreggor. On May 7, 2008, the Thurston County prosecutor filed West's petition with Thurston County Superior Court.
¶ 4 The petition alleged (1) Telford and McGreggor approved expenditures for the port's cargo yard expansion project without a comprehensive scheme of harbor improvements in place as required under RCW *1251 53.20.010, (2a) Telford approved a lease that committed the Port of Olympia to developments not contained in a comprehensive scheme of harbor improvements, and (2b) not reviewed under the SEPA. Although West's petition did not specify the improvements or lease involved, or the law he alleged was violated, the parties agreed to these foregoing details.
¶ 5 At the hearing on his petition, West argued charge 1 constituted malfeasance because RCW 53.20.010 requires a comprehensive scheme of harbor improvements that consists of a single document, titled as such, and amended to include the proposed improvements. Telford and McGreggor agreed that no such document exists. However, Telford and McGreggor argued that the required comprehensive scheme does exist in the form of many documents, notices, and hearings, and pointed to several documents adopted over time by the port commission as evidence of a comprehensive plan.[1]
¶ 6 After hearing oral argument, Judge William McPhee issued an opinion on June 11, 2008. The court ruled charges 1 and 2a were legally insufficient, reasoning that because RCW 53.20.010 does not limit the comprehensive scheme to a single document, the commissioners' behavior was not illegal and therefore not malfeasance. The court held charge 2b was legally insufficient because Telford had a legally cognizable justification for approving the lease and because West failed to satisfy his burden to show Telford intended to violate SEPA when he approved the lease. On July 1, 2008, the court entered its final order on the recall petition and denied West's motion for reconsideration.

ANALYSIS
¶ 7 Under article I, sections 33 and 34 of the Washington Constitution, Washington citizens have the right to petition to recall an elected official from office before the expiration of his or her term. Chandler v. Otto, 103 Wash.2d 268, 270, 693 P.2d 71 (1984). The recall process is governed by RCW 29A.56.110-.140.
¶ 8 An elected official can be recalled only for cause. Chandler, 103 Wash.2d at 274, 693 P.2d 71. That is, the petition must be factually and legally sufficient. Id. Whether the charges are factually and legally sufficient is determined by the superior court where the officer subject to recall resides. RCW 29A.56.130-.140. The court must determine sufficiency from the face of the petition. In re Recall of Zufelt, 112 Wash.2d 906, 914, 774 P.2d 1223 (1989).
¶ 9 This court reviews the sufficiency of a recall petition de novo. Teaford v. Howard, 104 Wash.2d 580, 590, 707 P.2d 1327 (1985).
¶ 10 A charge is factually sufficient if the facts "establish a prima facie case of misfeasance, malfeasance, or violation of the oath of office" and are "stated in concise language and provide a detailed description" in order to "enable the electorate and a challenged official to make informed decisions." In re Recall of Wasson, 149 Wash.2d 787, 791, 72 P.3d 170 (2003) (citing Cole v. Webster, 103 Wash.2d 280, 285, 692 P.2d 799 (1984); Chandler, 103 Wash.2d at 274, 693 P.2d 71). The petitioner must have some knowledge of the facts underlying the charges. In re Recall of Ackerson, 143 Wash.2d 366, 372, 20 P.3d 930 (2001). Where the charge alleges the official violated the law, the facts must show the official intended to do so. In re Recall of Wade, 115 Wash.2d 544, 549, 799 P.2d 1179 (1990).
¶ 11 A charge is legally sufficient if the charge defines "substantial conduct clearly amounting to misfeasance, malfeasance or a violation of the oath of office," and there is no legal justification for the challenged conduct. Wasson, 149 Wash.2d at 791, 72 P.3d 170. RCW 29A.56.110 defines malfeasance and misfeasance:
(1) "Misfeasance" or "malfeasance" in office means any wrongful conduct that *1252 affects, interrupts, or interferes with the performance of official duty;
(a) Additionally, "misfeasance" in office means the performance of a duty in an improper manner; and
(b) Additionally, "malfeasance" in office means the commission of an unlawful act.
Lawful, discretionary acts are not a basis for recall. Chandler, 103 Wash.2d at 274, 693 P.2d 71. A reviewing court must not consider the truthfulness of the charges but instead must accept the allegations as true and determine whether the charges on their face support the conclusion the officer abused his or her position. Cole, 103 Wash.2d at 287, 692 P.2d 799; Teaford, 104 Wash.2d at 586, 707 P.2d 1327.

Legal sufficiency of charges 1 and 2a.
¶ 12 In his recall petition, West charged that Telford and McGreggor approved expenditures for a cargo yard expansion project without a comprehensive scheme of harbor improvements in place as required under RCW 53.20.010, and Telford approved a lease that committed the Port of Olympia to developments not contained in a comprehensive scheme of harbor improvements. West argues this was malfeasance because Telford and McGreggor did not first establish a comprehensive scheme of harbor improvements, titled as such, and limited to one document.
¶ 13 The superior court concluded these charges were not legally sufficient because he found that RCW 53.20.010 does not limit the comprehensive plan to one document entitled "comprehensive scheme." Clerk's Papers (CP) at 26-27.
¶ 14 RCW 53.20.010 provides:
It shall be the duty of the port commission of any port district, before creating any improvements hereunder, to adopt a comprehensive scheme of harbor improvement in the port district, after a public hearing thereon, of which notice shall be published once a week for two consecutive weeks in a newspaper of general circulation in the port district, and no expenditure for the carrying on of any harbor improvements shall be made by the port commission other than the necessary salaries, including engineers, clerical and office expenses of the port district, and the cost of engineering, surveying, preparation and collection of data necessary for the making and adoption of a general scheme of harbor improvements in the port district, unless and until the comprehensive scheme of harbor improvement has been so officially adopted by the port commission.
¶ 15 RCW 53.20.020 provides:
When such general plans shall have been adopted or approved, as aforesaid, every improvement to be made by said commission shall be made substantially in accordance therewith unless and until such general plans shall have been officially changed by the port commission after a public hearing thereon, of which at least ten days' notice shall be published in a newspaper in general circulation in such port district.
¶ 16 West argues that because the original legislation in 1911 required that the public vote on each expenditure, "the Legislature obviously intended the Comprehensive Scheme to be readily discernable from the face of a single document." Appellant's Br. (Amended) at 10. The original legislation, to which West refers, provided:
When such general plans shall have been adopted or approved, as aforesaid, every improvement to be made by said port commission shall be made substantially in accordance therewith, unless and until such general plans shall have been changed by a majority vote of the qualified electors of the port district voting thereon at any general election or special election called by the port commission for such purpose.

Laws of 1911, ch. 92, § 7, at 423 (emphasis added). However, this statute was amended in 1947 and no longer requires a public vote on the comprehensive scheme. RCW 53.20.020; Laws of 1947, ch. 24, § 1, at 40.
¶ 17 Because the current statutory language provides for adoption of the scheme by the port, not by the voters, the current language of the statute does not support West's argument that the legislature intends the scheme to be contained in a single document labeled comprehensive scheme of harbor improvements in order to facilitate the voting process.
¶ 18 Moreover, neither the statute nor the case law requires that the comprehensive scheme must consist of a single document *1253 titled "comprehensive scheme." Nothing in the statutory language specifies the required length, content, or title of the comprehensive scheme. Thus, as the commissioners argue, the statutory requirement for a comprehensive scheme of harbor improvements may be met through a single document or a series of documents.
¶ 19 Turning to the case law, this court has held that the legislative purpose of RCW 53.20.010 is to,
give the taxpayers a fairly detailed picture of what the port will do with ... land if and when it is acquired, and [to inform] the taxpayers of the manner and purposes for which their money will be spent.
Hutchinson v. Port of Benton, 62 Wash.2d 451, 457, 383 P.2d 500 (1963).
¶ 20 Even prior to the amendment of the statute, this court held plans were sufficient where the scheme fairly informed voters of the nature and extent of proposed improvements but did not provide such details necessary for final construction of the improvement. Paine v. Port of Seattle, 70 Wash. 294, 126 P. 628, 127 P. 580 (1912). In Port of Everett v. Everett Improvement Co., 124 Wash. 486, 492-93, 214 P. 1064 (1923), this court held that the comprehensive scheme requires
at least a general outline plan of the improvements [the port] intends to construct. If it is intended to construct sea walls ... and the other structures and things enumerated in the resolution, a general plan of the several structures must be outlined, showing with definiteness their location, character and general dimensions, so that one examining the plan may know with some degree of certainty what is intended to be done.
¶ 21 Contrary to West's position, the statute and case law appear to allow a port commission considerable discretion in the creation of a comprehensive scheme of harbor improvements. Lawful, discretionary acts are not a basis for recall. Chandler, 103 Wash.2d at 274, 693 P.2d 71. Therefore, the port commissioners' failure to establish a comprehensive scheme titled as such and limited to one document does not constitute malfeasance, and West's charges are legally insufficient.

Factual and legal sufficiency of charge 2b.
¶ 22 West alleged in charge 2b that Telford approved a specific lease without first subjecting it to SEPA review under chapter 43.21C RCW. The superior court found this charge legally insufficient because West presented no evidence that Telford intended to violate SEPA and because legal justification existed for Telford's decision. We affirm the superior court and find the charge factually insufficient for the same reason.
¶ 23 While some inferences are permissible in a recall petition, on the whole, the facts must indicate an intention to violate the law. In re Recall of Carkeek, 156 Wash.2d 469, 128 P.3d 1231 (2006). West presents no evidence that Telford intended to violate SEPA except a December 16, 2008 hearing examiner opinion finding that the lease was not exempt from SEPA review, which was rendered months after Telford approved the lease under the belief it was exempt. Moreover, Telford and McGreggor present evidence that the lease did undergo SEPA review. Resp. Br. of Resp't's Telford & McGreggor at 16. The commissioners point to the port's "response to reconsideration" of SEPA review, which discusses the lease. CP at 185-268. In this document, the port states,
On April 16, 2007, the Port of Olympia issued a SEPA determination of MDNS (Mitigated Determination of Non-significance) for the Port/WC [(Weyerhaeuser Company)] Project which is the subject of this reconsideration proposal.
CP at 186.
¶ 24 The existence of the MDNS shows that at the time he approved the lease, Telford acted under the port's determination that the lease was exempt from SEPA review. The charge is legally and factually insufficient because there is no evidence Telford intended to violate SEPA by approving the lease, and the MDNS provides legal justification for Telford's actions.

West's constitutional challenge of RCW 29A.56.110-.140.
¶ 25 West argues RCW 29A.56.110-.140 unconstitutionally limits the right to *1254 recall public officials provided by article I, sections 33 and 34 of the Washington Constitution. Specifically, West challenges the requirement that a recall petition must first be submitted to superior court for a determination of factual and legal sufficiency.
¶ 26 This court has previously rejected the same constitutional challenge to the former version of the statute West challenges. In re Recall of Pearsall-Stipek, 129 Wash.2d 399, 401, 918 P.2d 493 (1996) (holding chapter 29.82 RCW does not unlawfully restricted right of recall). The court reasoned,
We have previously rejected substantially the same arguments [the petitioner] makes here, holding that statutes mandating the form of recall petitions, requiring judicial review, and defining the types of acts that may result in recall, carry out the framers' intent to limit the scope of the recall right to recall for cause.
Id. (citing Chandler, 103 Wash.2d at 270-73, 693 P.2d 71 (similar challenge to Laws of 1984, Reg. Sess., ch. 170, § 3, recodified as RCW 29A.56.130); In re Recall of Morrisette, 110 Wash.2d 933, 936-37, 756 P.2d 1318 (1988)).
¶ 27 An appellant who challenges the constitutionality of a legislative enactment must establish invalidity of the statute. Hontz v. State, 105 Wash.2d 302, 306, 714 P.2d 1176 (1986). In Pearsall-Stipek and Morrisette, the court found the appellant did not meet this burden because the statutory recall procedures are consistent with legislative intent to limit the scope of recall to recall for cause. Pearsall-Stipek, 129 Wash.2d at 401, 918 P.2d 493; Morrisette, 110 Wash.2d at 936, 756 P.2d 1318.
¶ 28 West argues that the language of article I, sections 33 and 34 does not support the requirement to first petition the superior court before seeking signatures from the people. Appellant's Reply Br. at 22-25. He argues all that is required when a petition is filed is a "`reciting' of acts, not a trial or judicial weighing of factual or legal sufficiency, intent, or other hair splitting." Id. at 25.
¶ 29 This court, however, has construed the language of article I, section 33 to require a showing of cause for recall, based on the framers' intent to "prevent recall elections from reflecting on the popularity of the political decisions made by elected officers." Chandler, 103 Wash.2d at 270-71, 693 P.2d 71. Specifically, the court relied on the amendment's language requiring allegations of malfeasance, misfeasance, or a violation of the oath of office. Id. Additionally, the court relied on the fact that Washington was one of the only states at the time to require a showing of cause or allegations of misfeasance, malfeasance, or violation of oath of office. Id. In Chandler, the court noted that the 1984 amendments to the recall statute, which West now challenges,
indicate that the Legislature has finally followed the suggestions of members of this court and has provided safeguards to protect an elected official from being subjected to the financial and personal burden of a recall election grounded on false or frivolous charges.
Id. at 271-72, 693 P.2d 71 (citation omitted).
¶ 30 West further argues that the statutory limitations requiring a determination of factual and legal sufficiency by a superior court "places the recall beyond the grasp of the ordinary citizen who lacks a team of trial attorneys specializing in electoral contests." Appellant's Reply Br. at 25. However, this process does not limit the recall right as drastically as West may imagine.
¶ 31 This court has repeatedly recognized that although courts serve a gateway function in the recall process, this role is significantly limited. Courts do not evaluate the truthfulness of the charges in a recall petition; rather, courts must assume asserted facts as true and evaluate only the legal and factual sufficiency of the charges. In re Recall of Kast, 144 Wash.2d 807, 31 P.3d 677 (2001). It is the voters, not the courts, who ultimately act as fact finders. In re Recall of West, 155 Wash.2d 659, 121 P.3d 1190 (2005).
The question as to whether the grounds for recall are sufficient to cause the voters to desire the removal of the official in question is always a political one to be determined by them, and as to this courts will never interfere. But the question as to whether or not the proceedings looking to the recall of the officer comply with the constitutional and statutory law upon the *1255 subject is purely and wholly a judicial question.
Gibson v. Campbell, 136 Wash. 467, 471-72, 241 P. 21 (1925). This limited role serves to protect the process by ensuring that only legally and factually sufficient charges are referred to the voters. Carkeek, 156 Wash.2d 469, 128 P.3d 1231. As we have done in prior cases, we reject West's constitutional challenge to RCW 29A.56.110-.140.

CONCLUSION
¶ 32 We affirm the superior court's determination that West's charges against the port commissioners are insufficient and reject West's constitutional challenge to RCW 29A.56.110-.140.
WE CONCUR: GERRY L. ALEXANDER, Chief Justice, CHARLES W. JOHNSON, RICHARD B. SANDERS, TOM CHAMBERS, SUSAN OWENS, MARY E. FAIRHURST, JAMES M. JOHNSON and DEBRA L. STEPHENS, Justices.
NOTES
[1] The superior court took notice in its ruling that the following documents were submitted by the port as evidence of its comprehensive scheme for harbor improvements: Comprehensive Plan, Strategic Plan, Land Use Plan, Final Environmental Impact Statement (EIS) for the Port of Olympia Strategic Plan, Addendum to the Final EIS for the Budd Inlet and Airdustrial Park Land Use Plans, annual Capital Facilities Budgets, and Priority Initiatives. West does not challenge the existence of these documents.