[No. 85361-4.   En Banc.]
Argued April 28, 2011.     Decided July 21, 2011.

*In the Matter of the Recall of* MARK E. LINDQUIST, *Pierce County Prosecuting Attorney, Respondent.*

*Daniel B. Fishburn*, pro se.

*Alberto Ugas*, pro se.

*G. Perrin Walker*, *Mark A. Hood*, and *Daniel C. Montopoli* (of *Vandeberg, Johnson & Gandara*) and *Douglas W. Vanscoy* and *David H. Prather*, *Deputy Prosecuting Attorneys*, for respondent.

¶1 FAIRHURST, J. — Petitioners Albert O. Ugás and Daniel B. Fishburn filed a recall petition against respondent Pierce County Prosecuting Attorney Mark Lindquist, charging him with (1) misfeasance and/or malfeasance and breach of his oath of office for failing to investigate alleged corruption and falsification of records by former Pierce County Assessor-

Treasurer Ken Madsen and (2) obstruction of justice for deterring law enforcement from investigating Madsen. After dismissing petitioners' affidavit of prejudice, Judge James Cayce held the recall petition to be legally and factually insufficient and awarded respondent $50,000 in attorney fees for petitioners' intentionally filing a frivolous recall petition in bad faith. Petitioners moved for direct review of the dismissal of the affidavit of prejudice, the finding that the recall petition was legally and factually insufficient, and the award of attorney fees. We affirm the trial court.

## FACTS

¶2 Ugás is the Pierce County deputy assessor-treasurer, having been promoted to second in authority by current assessor-treasurer Dale Washam. Fishburn became acquainted with the assessor-treasurer's office when Washam asked him to serve on the Pierce County assessor-treasurer's citizens commission to investigate the actions of former assessor-treasurer Ken Madsen. Lindquist became the Pierce County prosecuting attorney on September 1, 2009, after the retirement of former prosecuting attorney Gerald Horne. Shortly after the recall petition was filed, Lindquist was retained in the November 2010 election.

¶3 It appears that Washam's promotion of Ugás to deputy assessor-treasurer and appointment of Fishburn to the citizens commission were motivated, at least in part, by Washam's desire to continue his campaign against Madsen. Washam himself previously investigated Madsen and even brought a recall petition against Madsen during his tenure as assessor-treasurer. In 2005, Judge William Thomas McPhee dismissed Washam's recall petition as factually and legally insufficient, finding a "legally cognizable justification" for Madsen's actions. Clerk's Papers (CP) at 167. Petitioners' present recall action against Lindquist contains many of the same documents included in the recall against Madsen.

¶4 After his recall petition was dismissed, Washam continued his pursuit of Madsen, writing five letters to

Lindquist requesting that he investigate 368,642 alleged acts of forgery committed by Madsen. Lindquist refused Washam's requests and reiterated Horne's position that prosecution would be inappropriate in light of the legally cognizable justification for Madsen's actions and a Pierce County Performance Audit Committee's determination that taxpayers were not harmed.

¶5 After Lindquist refused to prosecute, Washam and Ugás initiated a strategy to remove Lindquist in the upcoming election. Washam and Ugás met with Lindquist's opponent, Bertha Fitzer, in September 2010 before the election. At the meeting, Ugás produced a photo of Lindquist with "Defeat Lindquist" written on it. Ugás outlined the exhibits in the recall petition as potential tools for unseating Lindquist. Fitzer refused to use the contents of the recall petition against Lindquist. Undeterred, petitioners, acting pro se, filed the recall against Lindquist on October 18, 2010, approximately two weeks before the election.

> The petition essentially makes two (2) substantive charges, namely that Mark Evans Lindquist, as Pierce County Prosecuting Attorney, committed misfeasance and/or malfeasance of office and violated his Oath of Office for (i) declining to perform his statutorily mandated duty (RCW 36.27.020[(6)]) to institute proceedings as regards the alleged falsification of official taxpayers assessment records . . . and (ii) that Prosecuting Attorney Lindquist obstructed justice by discouraging the Pierce County Sheriff and Tacoma Police departments from pursuing investigations into [Madsen's tenure as assessor-treasurer].

Pet'rs' Opening Br. at 10-11 (first alteration in original). Ugás admitted that he knew the charges against Madsen had been dismissed for lack of legal and factual sufficiency when he filed the recall petition. He also knew of the audit committee's conclusion that no taxpayers had been harmed. Government officials, including the governor, the attorney general, and the Pierce County sheriff all rejected Ugás' requests to bring actions against Lindquist, informing Ugás that discretion to prosecute rested with the prosecuting attorney.

¶6 Despite this knowledge, petitioners filed the recall petition, believing that Lindquist "would not appreciate the timing so close to an election." CP at 906. To defend his timing, Ugás asserted that Fishburn told him there was a legal obligation to file the recall petition within 10 days of Lindquist's latest refusal to take action against Madsen. However, Ugás could not cite any legal authority for this belief. Fishburn maintained that his belief was based on RCW 29A.56.270. This statute, however, instead prescribes the time line for a sufficiency hearing based on the date the ballot synopsis is filed in superior court, stating that "[a]ny proceeding to compel or prevent the performance of any such act [by a public official] shall be begun within ten days from the time the cause of complaint arises." RCW 29A.56.270.

¶7 After petitioners filed the recall petition, the attorney general filed a ballot synopsis in Pierce County Superior Court to determine the legal and factual sufficiency of the petition. Judge Cayce, a visiting judge from King County Superior Court, was assigned to hear the case. On November 8, 2010, Judge Cayce's assistant scheduled a prehearing telephonic conference for the following day. Petitioners declined to participate in the telephone conference. One of the issues discussed at the conference was an affidavit Lindquist filed stating that he would be on a family vacation until November 18, 2010, making him unable to appear at the hearing on the merits scheduled for November 16, 2010. During the conference, Lindquist's attorney "made an oral motion that . . . the court . . . continue the hearing until the 19th of November, when Respondent" would be available to attend. CP at 712. A continuance would have delayed the hearing beyond the statutory time limit of RCW 29A.56.270. Judge Cayce denied the motion.

¶8 The day before the scheduled hearing on the merits, petitioners filed an affidavit of prejudice requesting that another judge hear the case. The affidavit was not accompanied by a signed motion stating the relief sought. Lindquist challenged the timeliness of the affidavit and

asked the court to hear oral argument at the following day's hearing. The court granted Lindquist's request and advised the parties. Petitioners responded that they believed no discretionary ruling had been made and indicated their intention not to attend the following day's hearing.

¶9 Petitioners did not attend the hearing. Judge Cayce dismissed the affidavit of prejudice because it was not accompanied by a signed motion and was untimely because it had been filed after "discretionary rulings includ[ing] . . . denial of Respondent's motion for continuance." CP at 709. After dismissing the affidavit of prejudice, the court recessed, instructing Lindquist's counsel to contact petitioners and tell them to come and argue the merits of the recall petition. Lindquist's counsel left a message on Fishburn's answering machine; Ugás indicated that they did not intend to appear. After the recess, Judge Cayce ruled that the recall petition was factually and legally insufficient but declined to rule at that time on awarding attorney fees.

¶10 To determine whether the petition was filed in bad faith, Lindquist moved for issuance of a subpoena duces tecum directing petitioners to appear for a deposition and to produce documents regarding petitioners' preparation of the recall petition. Judge Cayce granted the motion. At his deposition, Ugás refused to produce documents ordered under the subpoena. Instead, Ugás read a prepared statement claiming a privilege against self-incrimination. Ugás also acknowledged his meeting with Washam and Fitzer and stated that he believed Lindquist would not appreciate the timing of the filing.

¶11 At a hearing to determine the award of attorney fees, Judge Cayce ruled that petitioners filed the recall petition in bad faith to harass Lindquist and attempt to influence the election. He further held that the petition was intentionally frivolous because it disregarded Judge McPhee's 2005 ruling that Madsen had a legally cognizable justification for his actions. Judge Cayce held that petitioners' failure to conduct a reasonable inquiry into the legal

and factual bases for the recall petition charges constituted a violation of CR 11, entitling Lindquist to reasonable attorney fees. Judge Cayce further held that petitioners acted in bad faith by refusing to participate in the prehearing conference, refusing to attend the hearing on the affidavit of prejudice and the merits of the recall petition, and refusing to produce documents in response to the court's subpoena. Finally, Judge Cayce held that Ugás' assertion of a Fifth Amendment privilege to justify his refusal to produce documents and to answer questions under oath entitled the court to infer that the filing of the recall petition was intended as political harassment. On the basis of these holdings, Judge Cayce ruled that Lindquist was entitled to reasonable attorney fees. Lindquist's attorneys submitted an affidavit and lodestar calculation itemizing time spent and the hourly rate of each employee who had worked on the case. Although Lindquist's attorneys had previously estimated their fees would be $50,000, the fees documented in the affidavit totaled more than $56,000. Given the previous estimate, Judge Cayce limited the award of attorney fees to $50,000.

## ISSUES

¶12 1. Did the trial court err by dismissing petitioners' affidavit of prejudice when it was filed without a signed motion and was untimely?

¶13 2. Did the trial court err by dismissing the recall petition as factually and legally insufficient?[1]

¶14 3. Did the trial court err by awarding attorney fees for intentionally filing a frivolous recall petition in bad faith?

---

[1] Petitioners also challenge the attorney general's ballot synopsis of the recall charges as inadequate under RCW 29A.56.130. The trial judge has the power to "correct any ballot synopsis it deems inadequate." RCW 29A.56.140. Judge Cayce made no changes and held that the ballot synopsis was adequate. We need not address the ballot synopsis given that the recall petition charges are legally and factually insufficient and will not appear on any ballot.

## ANALYSIS

A.  The trial court properly dismissed petitioners' affidavit of prejudice because it was filed without a signed motion and was untimely

¶15 In Washington, "a party litigant is entitled, as a matter of right, to a change of judges upon the timely filing of a motion and affidavit of prejudice." *State v. Dixon*, 74 Wn.2d 700, 702, 446 P.2d 329 (1968).

1.  *The affidavit of prejudice was properly dismissed because it was not accompanied by a signed motion*

¶16 Lindquist argues that the affidavit of prejudice was properly dismissed under RCW 4.12.050, CR 7, and CR 11 because it was not accompanied by a written motion. A party may establish by a motion supported by an affidavit that the judge is prejudiced against the party. RCW 4.12.050. A motion shall be made in writing and shall set forth the relief sought. CR 7(b)(1). "A party who is not represented by an attorney shall sign and date the party's [motion]. If a [motion] is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the" movant. CR 11(a).

¶17 Judge Cayce dismissed the affidavit of prejudice because it was not accompanied by a signed motion. Petitioners argue that because they acted pro se, the affidavit of prejudice should not be dismissed for what they consider a technicality; however, this defect could have been remedied if petitioners had chosen to attend the scheduled hearing. We conclude that the affidavit of prejudice was properly dismissed because it was not accompanied by a signed motion as required by RCW 4.12.050, CR 7, and CR 11.

2. *The affidavit of prejudice was properly dismissed as untimely because it was filed after Judge Cayce's discretionary ruling on the motion on the continuance*

¶18 To be timely, an affidavit of prejudice must be made "before the judge presiding has made any order or ruling involving discretion." RCW 4.12.050(1). "Grant or denial of a continuance is a discretionary ruling because the court must consider various factors, such as diligence, materiality, due process, a need for an orderly procedure, and the possible impact of the result on the trial." *State v. Guajardo*, 50 Wn. App. 16, 19, 746 P.2d 1231 (1987). "The denial of a continuance rests in the sound discretion of the trial court and will not be reversed except for manifest abuse." *Donaldson v. Greenwood*, 40 Wn.2d 238, 242, 242 P.2d 1038 (1952).

¶19 Lindquist argues that denial of his motion to continue the sufficiency hearing until he had returned from vacation constitutes a discretionary ruling. Petitioners counter that "[a]rranging the calendar or setting matters for hearing do not constitute discretionary acts under [chapter 4.12 RCW] for purposes of barring filing of an affidavit [of] prejudice." Pet'rs' Opening Br. at 16. Petitioners cite *Rhinehart v. Seattle Times Co.*, arguing that Judge Cayce used no discretion in denying the continuance because the hearing date was mandated by RCW 29A.56.140.[2] 51 Wn. App. 561, 578, 754 P.2d 1243 (1988) ("The exercise of discretion is not involved where a certain action or result follows as a matter of right upon a mere request; rather, the court's discretion is invoked only where, in the exercise of that discretion, the court may either grant or deny a party's request."). On the same page that petitioners cite, however, the *Rhinehart* court distinguishes preparing the calendar

---

[2] Petitioners previously invoked this statute to justify the timing of the recall petition. Now, petitioners (correctly) cite this statute as mandating the timeline for hearing the merits of the recall, rather than mandating when a recall petition must be filed.

from granting a continuance, noting that "[r]ulings involving the exercise of discretion include the granting of a continuance." *Id.* In the present case, Judge Cayce was required to invoke his discretion in weighing whether delaying the hearing to allow Lindquist to be present justified continuing the hearing beyond the statutory deadline. As Justice Utter wrote, "[T]he mandatory wording of [the recall statute] is not dispositive. Where the recall statute declares that things shall be done in a particular time and manner, the procedures will be regarded as mandatory only if they affect the actual merits of the election." *Pederson v. Moser*, 99 Wn.2d 456, 459-60, 662 P.2d 866 (1983). Here, the merits of the recall petition would have been unaffected by granting the requested continuance. Further, denying the continuance comports with our ruling in *Donaldson*, in which we upheld the trial court's use of discretion in denying a continuance under similar circumstances. 40 Wn.2d at 241-43. In *Donaldson*, the defendant filed an affidavit informing the court that he would be in Paris for his daughter's wedding. *Id.* at 241. The "defendant left the juris diction without the assurance of the trial court that the motion would be granted." *Id.* We held that "the trial judge not only did not abuse his discretion in denying a further continuance, but, under the circumstances of the case, exercised a high degree of fairness and judicial restraint." *Id.* at 243. We affirm the dismissal of the affidavit of prejudice as untimely because it was filed after a discretionary ruling on a continuance.

B.   The trial court properly dismissed the recall petition's charges as factually and legally insufficient

¶20  In recall proceedings, questions of factual and legal sufficiency are reviewed de novo. *Teaford v. Howard*, 104 Wn.2d 580, 590, 707 P.2d 1327 (1985). Elected officials may be recalled for malfeasance, misfeasance, and violation of their oath of office. Const. art. I, §§ 33-34; RCW 29A.56.110. Courts ensure that charges are factually and

legally sufficient before the charges are placed before the voters, but courts do not evaluate the truthfulness of the charges. RCW 29A.56.140; *In re Recall of Kast*, 144 Wn.2d 807, 813, 815, 31 P.3d 677 (2001). "[T]he courts serve as gatekeepers to ensure that public officials are not subject to 'frivolous or unsubstantiated charges.'" *In re Recall of Robinson*, 156 Wn.2d 704, 707, 132 P.3d 124 (2006) (quoting *Kast*, 144 Wn.2d at 813).

¶21 Factual sufficiency requires that the charge state each act of misfeasance, malfeasance, or breach of the oath of office in concise language, and provide a detailed description, including the approximate date, location, and nature of each act. *In re Recall of Lee*, 122 Wn.2d 613, 616, 859 P.2d 1244 (1993). The charge must demonstrate that the petitioner "knows of identifiable facts that support the charge." *In re Recall of Reed*, 156 Wn.2d 53, 58, 124 P.3d 279 (2005). Where an unlawful act is alleged, the petitioner must show facts indicating the official had knowledge of and intent to commit an unlawful act. *In re Recall of Telford*, 166 Wn.2d 148, 158, 206 P.3d 1248 (2009).

¶22 To be legally sufficient, the petition must state with specificity "'substantial conduct clearly amounting to misfeasance, malfeasance or violation of the oath of office.'" *In re Recall of Wade*, 115 Wn.2d 544, 549, 799 P.2d 1179 (1990) (quoting *Teaford*, 104 Wn.2d at 584). "[A] legally cognizable justification for an official's conduct renders a recall petition insufficient." *Id.* "[A]n elected official cannot be recalled for appropriately exercising the discretion granted him or her by law." *Reed*, 156 Wn.2d at 59. Officials cannot be recalled for exercising their discretion unless that discretion was exercised in a manifestly unreasonable manner. *Id.* An attack on the official's judgment in exercising discretion is not a proper basis for recall. *Jewett v. Hawkins*, 123 Wn.2d 446, 450-51, 868 P.2d 146 (1994).

1.  *Charge one was properly dismissed as factually and legally insufficient because prosecutors have no duty to investigate and have wide discretion not to prosecute*

¶23 Charge one alleges that Lindquist committed misfeasance, malfeasance, or violated his oath of office by failing to investigate and prosecute Madsen. "A prosecuting attorney is dependent upon law enforcement agencies to conduct the necessary factual investigation which must precede the decision to prosecute." RCW 9.94A.411(2)(b)(i). "A prosecuting attorney may decline to prosecute . . . in situations where prosecution would serve no public purpose, would defeat the underlying purpose of the law in question or would result in decreased respect for the law." RCW 9.94A.411(1). Prosecutors enjoy wide discretion "to file charges or refuse to charge for reasons other than the mere ability to establish guilt. [The prosecutor] may consider a wide range of factors in addition to the strength of the State's case in deciding whether prosecution would be in the public interest." *State v. Rowe*, 93 Wn.2d 277, 287, 609 P.2d 1348 (1980).

¶24 Petitioners argue that Lindquist breached his statutory duty to "[i]nstitute and prosecute proceedings before magistrates for the arrest of persons charged with or reasonably suspected of felonies when the prosecuting attorney has information that any such offense has been committed." RCW 36.27.020(6). Lindquist contends that the prosecuting attorney does not perform investigations, and that any duty to prosecute arises only after receiving a law enforcement agency's investigation. In response to the argument that prosecutors do not conduct investigations, petitioners concede that Lindquist's argument is "technically accurate" but "falls far too short in terms of representing the full scope of the [prosecutor's] inherent responsibilities." Pet'rs' Opening Br. at 24. Petitioners offer several general statements about a prosecutor's inherent responsibilities but cite no authority to determine when failing to

investigate or declining to prosecute would constitute misfeasance, malfeasance, or breach of oath of office.

¶25 Charge one is factually and legally insufficient because Lindquist had no duty to investigate. He had no law enforcement investigation presented to him upon which to base a decision to prosecute. Even with a law enforcement investigation, Lindquist has discretion to decide whether to prosecute. Given his predecessor's refusal to prosecute, the audit committee's determination that taxpayers were not harmed, and the prior court ruling that Madsen had a legally cognizable justification for his actions, Lindquist acted well within his discretion not to prosecute. As Lindquist concludes, "[I]t is indisputably within the Prosecutor's discretion to decide that the prior determination by the judge will render obtaining a conviction problematic at best, and the very bringing of such a prosecution a misuse of prosecutorial discretion." Resp't's Br. at 25.

2. *Charge two was properly dismissed because petitioners lacked the requisite evidence and knowledge to allege obstruction of justice*

¶26 Charge two alleges "that Prosecuting Attorney Lindquist obstructed justice by discouraging the Pierce County Sheriff and the Tacoma Police departments from pursuing investigations" into Madsen's conduct. Pet'rs' Opening Br. at 11. "The recall statutes do not require the petitioner to have firsthand knowledge, but they do require the petitioner have some form of knowledge more than simply a belief that the charges are true." *Reed*, 156 Wn.2d at 58. Where commission of an unlawful act is alleged, the petitioner must show facts indicating the official had knowledge of and intent to commit an unlawful act. *Telford*, 166 Wn.2d at 158.

¶27 Petitioners argue that pronouncements made by Lindquist "have effectively deterred other law enforcement agencies from allocating scarce resources into a complicated investigation the prosecutor has publicly announced his

office will not support." Pet'rs' Opening Br. at 30. "Prosecutors particularly[ ] have a professional responsibility to refrain from making extrajudicial statements that can be disseminated by mass media and have a substantial likelihood of materially affecting the delivery of justice." *Id.* Petitioners urge the court to apply these conceptions of obstruction of justice to Lindquist's actions. However, petitioners cite no authority and concede that they do not know the elements of the crime of obstruction of justice. Petitioners do not have personal knowledge of Lindquist's actions. Instead, as evidence of Lindquist's deterrent effect on an investigation, petitioners cite letters written by Pierce County Sheriff Paul A. Pastor and Tacoma Police Chief Donald L. Ramsdell, which were both addressed to Washam. Sheriff Pastor writes, "I have been advised by the Office of the Prosecuting Attorney that in May of this year that they declined to use any further investigative resources on this matter and the matter is closed. I attach a copy of the letter from the Office of the Prosecuting Attorney." CP at 368. The May 2009 letter that Pastor referenced and attached was from the office of former prosecuting attorney Horne. Lindquist did not take office until September 2009. Ramsdell's letter similarly cites correspondence with Lindquist's predecessor. These letters cannot be evidence of obstruction of justice against Lindquist because he had not yet taken office. Petitioners' lack of evidence and knowledge of the charges necessitates dismissal of charge two.

C. The trial court properly awarded attorney fees against petitioners for intentionally filing a frivolous recall petition and for procedural bad faith

¶28 An award of attorney fees is reviewed for abuse of discretion and is reversed only if the court exercised its discretion on untenable grounds or for untenable reasons. *Chuong Van Pham v. Seattle City Light,* 159 Wn.2d 527, 538, 151 P.3d 976 (2007). In any civil action, a court

may award attorney fees if the action was "frivolous and advanced without reasonable cause . . . unless otherwise specifically provided by statute." RCW 4.84.185. In a recall action, the superior court holds a hearing on the merits, without cost to any party, to determine whether the acts stated in the charge satisfy the criteria for which a recall petition may be filed. RCW 29A.56.140. In addressing whether attorney fees are available in recall actions,

> we hold that the superior court may not award expenses and attorney fees under RCW 4.84.185 against a recall petitioner who brings a merely frivolous recall petition.
>
> This does not mean, however, that the courts are powerless to respond to intentionally frivolous recall petitions brought for the purpose of harassment. Both CR 11 and our inherent equitable powers authorize the award of attorney fees in cases of bad faith.

In re Recall of Pearsall-Stipek, 136 Wn.2d 255, 266-67, 961 P.2d 343 (1998). CR 11 sanctions are available against a pro se litigant for filing a claim for an improper purpose, or if the claim is not grounded in fact or law and the signing litigant failed to conduct a reasonable inquiry. McNeil v. Powers, 123 Wn. App. 577, 581, 97 P.3d 760 (2004). By signing a pleading (including a recall petition), motion, or legal memorandum, a party certifies that "it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." CR 11(a)(3). Violation of this rule allows the court to award a reasonable attorney fee. CR 11(a). Misquoting or omitting material portions of documentary evidence constitutes procedural bad faith sufficient to award attorney fees. Rogerson Hiller Corp. v. Port of Port Angeles, 96 Wn. App. 918, 928, 982 P.2d 131 (1999). Sufficient evidence shows that petitioners brought the recall petition with charges they knew to be frivolous, they did so for the purpose of harassment, and they acted in bad faith throughout the recall process.

¶29 Petitioners' knowledge shows their claim was frivolous. Petitioners knew that the trial court had dismissed Washam's recall petition, finding a legally cognizable justification for Madsen's actions, and that no taxpayers had been harmed. Petitioners had been told by government officials, including the governor, attorney general, Pierce County sheriff, and Tacoma police chief, that investigations are performed by law enforcement and that discretion to prosecute rests with the prosecuting attorney. Despite this knowledge, petitioners' recall petition charged Lindquist with failing to investigate and prosecute Madsen. The petitioners were unable to list the elements of obstruction of justice, let alone show that Lindquist had knowledge and intent to break the law. Accusing a prosecuting attorney of obstruction of justice is a serious allegation, and doing so baselessly and directly before an election justifies an award of attorney fees. Clearly, petitioners filed an intentionally frivolous recall petition.

¶30 The timing of the filing of the recall petition supports that it was filed for the purpose of political harassment. The timing allowed the recall petition's charges to be known before the election but too late for Lindquist to clear his name in a hearing on the merits. Ugás' assertion that Lindquist would not appreciate the timing of the recall petition evidences intent for the petition to harass Lindquist, not to compel him to investigate or prosecute Madsen. Ugás' meeting with Fitzer further supports the inference that petitioners' motives were politically motivated.[3] Petitioners' refusal to comply with the subpoena

---

[3] In fact, taxpayers would likely be harmed if the award of attorney fees were reversed. "Whenever an action . . . is brought against any past or present officer . . . arising from acts or omissions while performing or in good faith purporting to perform his or her official duties, such officer . . . may request the local governmental entity to authorize the defense of the action or proceeding at the expense of the local governmental entity." RCW 4.96.041(1). "If the . . . governmental entity . . . finds that the acts or omissions of the officer . . . were, or in good faith purported to be, within the scope of his or her official duties, the request shall be granted [and] the necessary expenses of defending the action or proceeding shall be paid by the local governmental entity." RCW 4.96.041(2).

ordering petitioners to answer questions and produce documents relating to filing the recall petition entitled the trial court to infer that petitioners' actions were in bad faith and for the purpose of harassment. *See State Farm Fire & Cas. Co. v. Quang Huynh*, 92 Wn. App. 454, 462, 962 P.2d 854 (1998) (" 'When a witness in a civil suit refuses to answer a question on the ground that his answer might tend to incriminate him, . . . the trier of facts in a civil case is entitled to draw an inference from his refusal to so testify.' " (alteration in original) (quoting *Ikeda v. Curtis*, 43 Wn.2d 449, 458, 261 P.2d 684 (1953))). Petitioners' inability to justify filing a frivolous recall petition on the eve of an election, coupled with their refusal to explain their motivations, support the trial court's award of attorney fees.

¶31 Petitioners' postfiling conduct also constitutes procedural bad faith sufficient to award attorney fees under CR 11. Petitioners cited the *Rhinehart* opinion, which states setting a trial date is not a discretionary ruling, to support their argument that a continuance is not a discretionary ruling. While accurate for setting a trial date, the actual *Rhinehart* language states on the same page that whether to grant a continuance is discretionary. 51 Wn. App. at 579. Similarly, petitioners filed a written objection to the award of attorney fees arguing that this court "hold[s] that the [']superior court may not award expenses and attorney fees under RCW 4.84.185 against a recall petitioner who brings [a] merely [ ] frivolous recall petition.[']" CP at 942 (quoting *In re Pearsall-Stipek*, 136 Wn.2d at 266). However, petitioners omit the next two sentences, constituting the rule in *Pearsall-Stipek*, that make it clear that attorney fees are available for filing an intentionally frivolous recall petition or litigating in bad faith. 136 Wn.2d at 266-67.

¶32 The trial court also held that attorney fees were justified because of petitioners' disruption of the recall process by their "refusal to participate in a hearing to determine the validity of the Affidavit of Prejudice[;] re-

fusal to participate in a hearing on the legal and factual sufficiency of the Petitioners' Recall Petition; and Petitioner Ugás' refusal to produce documentation responsive to the Court's subpoena [which constitute] procedural bad faith." CP at 960. Of this conduct, petitioners' most egregious bad faith was perhaps their absence from the sufficiency hearing, which petitioners insisted be scheduled in compliance with the statutory deadline. Petitioners knew Lindquist would be compelled to cut short his postelection family vacation to attend a hearing that petitioners had no intention of attending. These examples of petitioners' procedural bad faith are sufficient to uphold the trial court's discretion in awarding attorney fees.

¶33 Given this evidence, overturning the award of attorney fees would be inappropriate because petitioners fail to show any abuse of discretion by the trial court. Petitioners contend that attorney fees cannot be assessed because "Judge Cayce lacks any authority to consider any issues beyond the authority granted by the recall statutes and his acts beyond his specific duty are acts without jurisdiction." Pet'rs' Opening Br. at 37. This argument cites no authority, directly conflicts with the *Pearsall-Stipek* holding that attorney fees *are* available, and must be rejected. Petitioners ask the court to adopt their unusual theory that "[a] recall action is not a civil lawsuit. There are no facts to be found, which means there are no facts to allege in a complaint." Pet'rs' Reply Br. at 21. Petitioners also attempt to avoid attorney fees by arguing "a simple point - they did not commence the recall action; the Attorney General's office did." Pet'rs' Reply Br. at 16. This misunderstanding permeates all of petitioners' arguments against an award of attorney fees and provides no basis for finding an abuse of discretion. We affirm the trial court's award of attorney fees. We also grant Lindquist's request for reasonable attorney fees and expenses on appeal based on the petitioners' aforementioned bad faith conduct at trial and during this appeal. *See* RAP 18.1.

## CONCLUSION

¶34 We affirm the trial court on all issues presented for review and award reasonable attorney fees and expenses incurred on appeal to Lindquist.

MADSEN, C.J., and C. JOHNSON, ALEXANDER, CHAMBERS, OWENS, STEPHENS, and WIGGINS, JJ., concur.

¶35 J.M. JOHNSON, J. (concurring/dissenting) — I concur with the majority's decision to affirm the trial court in dismissing the recall petition as factually and legally insufficient under article I, section 33 of the Washington State Constitution. I write separately, however, because I cannot agree with the decision to affirm the award of $50,000 in attorney fees against the petitioners who sought to exercise their constitutional right of recall under that provision. This aspect of the trial court's ruling should be reversed.

### FACTS AND PROCEDURAL HISTORY

¶36 Petitioners Albert O. Ugás and Daniel B. Fishburn filed a recall petition against Pierce County Prosecuting Attorney Mark Lindquist. Judge James Cayce found the recall petition to be factually and legally insufficient and further held that the petition was brought in bad faith. Judge Cayce then awarded Lindquist $50,000[4] in attorney fees against the private citizen petitioners for violating CR 11. Lindquist was represented by private counsel. Petitioners moved for direct review.

---

[4] This rounded amount makes the award even more questionable.

¶37 CR 11 gives the court discretion to award attorney fees when pleadings are filed in bad faith.[5] *See* CR 11(a). However, a court may not award expenses and attorney fees against a petitioner who brings a merely frivolous recall petition. *In re Recall of Pearsall-Stipek*, 136 Wn.2d 255, 266-67, 961 P.2d 343 (1998). In this case, the trial court held that petitioners' recall petition was filed in bad faith, finding that it was *intentionally* (not merely) frivolous and intended as political harassment. Clerk's Paper's (CP) at 959. The issue is whether an award of $50,000 was an *appropriate* sanction against a nonlawyer citizen for violating CR 11.[6]

¶38 We review a trial court's CR 11 sanction decision for abuse of discretion. *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 338, 858 P.2d 1054 (1993). An abuse of discretion exists when the trial court's decision is manifestly unreasonable or is exercised on untenable grounds or for untenable reasons. *State v. Dixon*, 159 Wn.2d 65, 76, 147 P.3d 991 (2006). A decision is based " 'on untenable grounds' " or made " 'for untenable reasons' " if it rests on facts unsupported in the record or if it

---

[5] CR 11 requires that every pleading, motion, and legal memorandum be signed by an attorney of record or, if the party is not represented by an attorney, by the party itself. CR 11(a). By signing, the attorney or party certifies that he or she has read the pleading, motion, or legal memorandum, and that to the best of the attorney's or party's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is well grounded in fact; (2) it is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law or the establishment of new law; (3) it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; and (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief. *Id.*

[6] If a pleading, motion, or legal memorandum is signed in violation of CR 11, "the court, upon motion or upon its own initiative, may impose upon the person who signed it, a represented party, or both, an *appropriate* sanction, which *may* include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or legal memorandum, including a reasonable attorney fee." CR 11(a) (emphasis added).

was reached by applying the wrong legal standard. *Id.* (quoting *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003)). The trial court abused its discretion because its decision was reached by applying an incomplete legal standard—it did not consider the appropriateness of a $50,000 sanction in the context of a recall petition filed pursuant to article I, section 33.

¶39 The purpose of CR 11 is to deter baseless filings and curb abuses of the judicial system. *Biggs v. Vail,* 124 Wn.2d 193, 197, 876 P.2d 448 (1994). CR 11 requires consideration of both its intent to deter baseless legal claims, as well as the potential chilling effect sanctions may have on meritorious claims. *Bryant v. Joseph Tree, Inc.*, 119 Wn.2d 210, 829 P.2d 1099 (1992). The trial court did not perform this analysis on the record. *See* Verbatim Report of Proceedings at 48-55 (Dec. 22, 2010); CP at 955-61, 975-76. *Cf. Biggs*, 124 Wn.2d 193 (holding that an order imposing CR 11 sanctions must specify the offending conduct, explain the basis for the sanction imposed, and quantify any amounts awarded with reasonable precision).

¶40 The substantial award of attorney fees in this case has the potential to chill meritorious recall petitions. This is especially concerning because our state constitution mandates that "[t]he right of petition . . . shall never be abridged." WASH. CONST. art. I, § 4. Rather than award monetary sanctions, the trial court could have imposed some other type of sanction that would adequately address the petitioners' conduct. *E.g., Joseph Tree*, 119 Wn.2d 210 (holding that the trial court should impose the least severe sanction necessary to carry out the primary purpose of CR 11); *see also Miller v. Badgley*, 51 Wn. App. 285, 753 P.2d 530 (1988) (holding that, although CR 11 specifically mentions monetary sanctions, this does not preclude the court from imposing some other type of remedy or combination of remedies).

¶41 I do not condone the intentional filing of frivolous recall petitions but defer to the constitutional mandate that

the right of the petitioner "shall never be abridged." WASH. CONST. art. I, § 4. Awarding $50,000 in attorney fees here does not appropriately protect the constitutional right of the people to participate in government through recall.

CONCLUSION

¶42 The trial court's findings are insufficient to establish that an award of $50,000 in attorney fees against petitioners is an appropriate sanction in a case involving the right of the people to petition for recall. The trial court's decision on this issue should be reversed.

After modification, further reconsideration denied September 8, 2011.