# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

<table>
<tr><td>In the Matter of the Parentage of K.D.,<br><br>Minor Child.<br><br><br><br>MICHELLE WILBURN-DONAHUE,<br><br>Appellant,<br><br>v.<br><br>CHRISTOPHER DILWORTH,<br><br>Respondent.</td><td>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)</td><td>No. 70537-7-I<br><br>DIVISION ONE<br><br><br><br><br><br>UNPUBLISHED OPINION<br><br><br><br>FILED: <u>January 21, 2014</u></td></tr>
</table>

SPEARMAN, A.C.J. — Michelle Wilburn-Donahue (now Baker) appeals an order of the superior court described by the court as a clarification of a previous order it entered in a parenting plan modification proceeding between Wilburn-Donahue and Christopher Dilworth. We agree with Wilburn-Donahue that (1) the order was not a clarification but a modification of the court's prior order and (2) the order was contrary to the court's findings of fact entered in conjunction with the parenting plan. We remand for partial vacation of the order.

FACTS

Wilburn-Donahue and Dilworth are the parents of K.D. After they separated in 2009, this parentage case was commenced. Wilburn-Donahue later married Charles Baker, who was transferred by his employer, the United States Army, to Anchorage, Alaska. Wilburn-Donahue obtained a temporary parenting plan that permitted her to take K.D. to Alaska and provided that the parties would share equally the cost of airfare for Dilworth to visit K.D. in Alaska. On March 30, 2010, the parties entered a final agreed parenting plan that provided, "The mother and the father shall each pay half of the airfare for the father to visit the child once per month and for the child to visit the father in Washington once a year." Clerk's Papers (CP) at 30. The final parenting plan does not mention hotel or car rental costs.

The Army later transferred Baker to Joint Base Lewis-McChord in Fort Lewis, Washington and the couple, with K.D., lived briefly in Washington, as evidenced by Wilburn-Donahue's filing of a notice of intent to relocate. Dilworth did not object. In 2012, the Army ordered Baker to move to San Antonio and Wilburn-Donahue filed a notice of intent to relocate. Dilworth objected and petitioned for modification of the parenting plan. He noted that the original parenting plan had been developed while K.D. was living in Alaska and asserted that flight times to San Antonio would be longer and travel to that city more costly. He requested, among a number of other things, that the parties "shall each pay half of the traveling expenses including airfare, hotel and rental car for the father to visit the child twice a month." CP at 54.

2

On April 17, 2013, the question of modification of the parenting plan was tried before the superior court. Wilburn-Donahue presented evidence that airfare costs to San Antonio and car rental and hotel rates in San Antonio were comparable to or less than costs of airfare to Anchorage and car rental and hotel rates in Anchorage. Dilworth presented no evidence to the contrary.

The next day, April 18, the superior court entered findings of fact and conclusions of law, an order on Dilworth's petition for modification of the parenting plan, and a final parenting plan. The court's orders substantially maintained the status quo as to the March 2010 parenting plan, with the court indicating in its order on modification that "[t]he petition for modification should be denied." CP at 93. It also stated in its findings of fact,

> The Court finds that the prior parenting plan of March, 2010 was entered by agreement and was drafted in circumstances similar to those now applicable. The parties foresaw that relocation was a probability due to the mother's husband's military obligations. The Court finds that the cost for the father to travel to San Antonio is not substantially different from the cost to travel to Anchorage, and . . . in most situations is just slightly less.

CP at 87. The court concluded,

> The fact of the mother residing in San Antonio does not create circumstances that are substantially different from those that applied when the mother resided in Anchorage. The mother's relocation is not a circumstance that was unforeseen at the time the current parenting plan was drafted, and was addressed in detail in that plan. There is therefore no basis under RCW 26.09.260 to modify the plan.

CP at 88. The parenting plan stated, at section 3.11:

> The mother and the father shall each pay half of the airfare for the father to visit the child once per month and for the child to visit the father in Washington once a year. The mother shall

reimburse the father for her share of air fare within 30 days of receipt of transportation expense verification, provided that the father books flights at least three weeks in advance and takes advantage of best available rates for airfare, hotel accommodations, and car rentals. If the father elects to book a more expensive transportation or accommodation, the mother shall be obligated only to pay 50% of what the father would have paid had he booked his reservations at least three weeks in advance and made reasonable effort to take advantage of available savings.

CP at 78-79.

On May 29, 2013, Dilworth sent the superior court an email seeking clarification of its April 18 orders.[1] In pertinent part, he sought clarification on whether the court's orders required Wilburn-Donahue to pay for half of his hotel accommodations and car rentals, in addition to airfare, when he visited K.D. in Texas.

On June 17, 2013, the superior court held a "telephonic meeting"[2] with Wilburn-Donahue and Dilworth.[3] It stated that while Wilburn-Donahue's attorney had not been notified of the meeting, she was waiving the opportunity to reschedule and wanted to handle the matter on her own.[4] The court confirmed that Wilburn-Donahue had seen Dilworth's email. The court read section 3.11 of the parenting plan and stated that it was "taken right out of the prior parenting

---

[1] The email does not appear in the record.

[2] Under CR 7(b)(5), "[o]ral argument on civil motions, including family law motions, may be heard by conference telephone call in the discretion of the court."

[3] The audio log of the telephonic meeting has been transcribed and appears in the record. The record also contains clerk's minutes summarizing the June 17, 2013 telephone meeting.

[4] Dilworth had appeared pro se in the modification proceedings.

plan." Report of Proceedings (RP) (6/17/13) at 10. It then stated, "It was the Court's intention that the reimbursement extends to air travel, hotel accommodation and vehicle rental." CP at 9. The following day, June 18, the court issued an order clarifying the April 18, 2013 parenting plan, stating,

> With regard to [Wilburn-Donahue's] obligation to reimburse [Dilworth] for the costs associated with his monthly visits with the child, Paragraph 3.11 shall require [Wilburn-Donahue] to reimburse [Dilworth] for half of the costs of airfare, hotel accommodations and car rentals pursuant to Paragraph 3.11. [Dilworth] is obligated to use his best efforts to obtain the most economical airfare, lodging and car rental expenses pursuant to Paragraph 3.11.

CP at 99.

Wilburn-Donahue appeals the superior court's June 18, 2013 order.

## DISCUSSION

Wilburn-Donahue contends the superior court's order was not a clarification but a modification of its prior order and that it must be vacated because (1) the court lacked subject matter jurisdiction due to Dilworth's failure to (a) bring a written motion in compliance with CR 5 and CR 7 and (b) timely move for amendment of the April 2013 parenting plan under CR 59; and (2) the court's order was contrary to its findings of fact entered in conjunction with the parenting plan. Dilworth responds that the superior court simply clarified its intent as contained in the April 2013 parenting plan.

We agree with Wilburn-Donahue that the superior court's order was not a clarification but a modification of its April 2013 parenting plan. A modification occurs when rights given to one of the parties are either extended beyond the

scope originally intended or reduced, giving the party fewer rights than those originally received. Rivard v. Rivard, 75 Wn.2d 415, 418, 451 P.2d 677 (1969). Section 3.11 of the April 2013 parenting plan expressly required Wilburn-Donahue to pay for half the cost of airfare. It did not expressly require her to pay for half of the costs of a rental car and hotel, though its language on that issue was somewhat ambiguous because it made reference to such costs. Notwithstanding any ambiguity in that language, the April 2013 orders purported to deny Dilworth's petition for modification and stated that there was "no basis" to modify the March 2010 parenting plan. That parenting plan required Wilburn-Donahue to pay for only half of Dilworth's airfare. It made no mention of Wilburn-Donahue sharing in the costs of hotel accommodations and car rentals. Furthermore, it is apparent from the superior court's statements during the June 2013 telephonic meeting that, insofar as travel reimbursements were concerned, it believed its April 2013 orders did not deviate from the previous March 2010 parenting plan.[5]

We also agree with Wilburn-Donahue that the superior court's ruling requiring her to share in the costs of hotel accommodations and car rentals is contrary to the findings of fact the court had entered in connection with the

---

[5] The judge who entered the April 18, 2013 and June 18, 2013 orders was not the same judge who entered the final agreed parenting plan on March 30, 2010.

parenting plan it was purporting to clarify.[6] The April 2013 findings of fact stated that Wilburn-Donahue's move to Texas did not create circumstances substantially different from those when she lived in Alaska; that her "relocation is not a circumstance that was unforeseen at the time the current parenting plan was drafted, and was addressed in detail in that plan"; and that there was "therefore no basis under RCW 26.09.260 to modify the plan."[7] CP at 88. The court's April 2013 order on modification stated that it was denying Dilworth's petition for modification. It is undisputed that the prior March 2010 parenting plan made no provision for Wilburn-Donahue to share in the costs of hotel accommodations or car rentals. Thus, the later order requiring Wilburn-Donahue to pay half of those expenses is contrary to and not supported by its findings of

---

[6] Wilburn-Donahue's argument that the superior court lacked subject matter jurisdiction to hear the clarification issue due to Dilworth's failure to bring a written motion in accordance with CR 5 and CR 7 is meritless. While it is undisputed that Dilworth did not comply with these rules, none of the authorities cited by Wilburn-Donahue supports her argument, nor does she otherwise show that she may raise this issue for the first time on appeal. Some of the cited cases simply pertain to whether the trial court ruled appropriately where procedural rules were involved. See In Recall of Lindquist, 172 Wn.2d 120, 129, 258 P.3d 9 (2011) (trial court properly dismissed affidavit of prejudice because it was filed without a signed motion as required by RCW 4.12.050, CR 7, and CR 11); In re Marriage of Christel v. Blanchard, 101 Wn. App. 13, 22-24, 1 P.3d 600 (2000) (trial court erred in entering order modifying dispute resolution process where neither party sought or moved for clarification or modification of that issue); Davenport v. Davenport, 4 Wn. App. 733, 734 (1971) (trial court did not err in denying a motion for a voluntary nonsuit where party did not file written motion until December 1970 but asserted that date of filing was the date party made oral, ex-parte motion in August 1970). James v. Cnty of Kitsap, 154 Wn.2d 574, 588, 115 P.3d 286 (2005) supports the proposition that a court's jurisdiction can be contingent upon procedural requirements imposed by statute. But CR 5 or CR 7 do not state that a court lacks subject matter jurisdiction for failure to comply with those rules. We also reject Wilburn-Donahue's argument that the superior court lacked subject matter jurisdiction because of Dilworth's failure to move for amendment of the April 18, 2013 parenting plan within ten days, as required by CR 59(h). She cites no authority for the proposition that a party's failure to comply with CR 59(h) results in a court's lack of subject matter jurisdiction.

[7] The court did not enter any findings of fact in connection with the order on clarification.

fact, which indicate that there have been no changes justifying modification to the parenting plan.

Accordingly, we remand with instructions to vacate, in pertinent part, the superior court's June 2013 order.

Remanded with instructions to vacate in part.[8]

WE CONCUR:

---

[8] The June 18, 2013 order also addressed Dilworth's request for clarification on a separate visitation issue. Wilburn-Donahue's appeal does not address that issue, and it is not affected by our decision.